## WEIR v. BAUER et al.

No. 4857. Decided January 7, 1930. (286 P. 936.)
Rehearing Denied April 17, 1930.

*M. E. Wilson* and *E. A. Walton,* both of Salt Lake City, for appellant.

*Willard Hanson* and *B. L. Liberman,* both of Salt Lake City, for respondents.

STRAUP, J.

This action was brought to foreclose a trust deed given by defendant Bullion Coalition Mines, a corporation, to secure the payment of an authorized issue by it of three hundred bonds of the par value of one thousand dollars each, or for $300,000. The trust deed covers all of the property, both real and personal, of the company, consisting chiefly of mining and milling properties, and a fruit orchard. The Utah Savings & Trust Company was named as trustee. The action was brought against the defendant corporation and also against B. F. Bauer, who is the president of the com-

pany, and who, with the plaintiff, at the commencement of this action, and for a long time prior thereto, owned all of the outstanding capital stock of the company, the plaintiff one-fifth and Bauer four-fifths thereof, and all of the outstanding bonds, consisting of 215 bonds of the par value of $1,000 each, of which the plaintiff was the holder of 47 bonds and Bauer 168 bonds. There were no other stockholders or bondholders. Several defenses were interposed to plaintiff's complaint, among them, that because of the provision in the trust deed to the effect that foreclosure, or any other proceeding whether in law or in equity, to collect the bonds or enforce any right under the trust deed, could be instituted only by the trustee and by it only upon the request of a majority of the holders of the outstanding bonds; that the trustee was not made a party to the proceeding, no demand made on it to bring the action or to enforce the collection of the bonds, and no request made by a majority of the holders of the outstanding bonds, which consisted of Bauer himself, that such or any proceeding be instituted and that the action was barred by the statute of limitations, in that more than six years had elapsed after the bonds had matured and after any interest had been paid thereon before the action was commenced.

In reply to such defenses it is alleged by the plaintiff that the payment of the bonds was from time to time extended and their validity acknowledged by the corporation and by Bauer; that Bauer and the plaintiff constituted the only shareholders of the outstanding capital stock and the only bondholders of the outstanding bonds; that Bauer, at divers times, stated to the plaintiff that he and the plaintiff were the only parties interested in the outstanding bonds and capital stock; that each "mutually promised one another that each would acknowledge the validity and existence of the bonds of the other;" that the corporation from time to time, and up to the commencement of the action by its annual income tax reports verified by Bauer, and by annual reports of its assets and liabilities, listed and represented

the 215 bonds of the par value of $215,000 as existing liabilities of the corporation and was given the benefit thereof with respect to its income tax liability to the government of the United States; that the corporation and Bauer, in granting a written lease and option to purchase all of the property of the corporation, recognized and acknowledged the 215 outstanding bonds of the par value of $215,000 as existing and valid liabilities of the corporation; that the corporation and Bauer, at all times prior to the commencement of the action, recognizing and treating the outstanding 215 bonds, which constituted all of the outstanding bonds, as valid and existing obligations of the corporation, lulled the plaintiff into a feeling of security that the statute of limitations would not be relied on or the validity or enforceable existence of the bonds challenged because of delay of any action to foreclose the bonds or to collect payment of them; that shortly before the commencement of the action and in June, 1925, the board of directors of the defendant corporation, consisting of the plaintiff, Bauer, and three other directors, which three others, as alleged, were in all matters relating to the corporation, dominated and controlled by Bauer, met to make a formal acknowledgment of the existence and validity of the 215 outstanding bonds and to extend the maturity and time of payment of them; that at such meeting a resolution was introduced to that effect by the plaintiff, and, as alleged, was unanimously adopted by the board; but when the minutes were written up they were made to recite not only that the 215 outstanding bonds be recognized and acknowledged as valid and existing, but also that 60 additional bonds, wrongfully claimed by Bauer to be held by him as collateral security for the payment of moneys advanced by him to the corporation, also be recognized and acknowledged and the maturity and time of payment of all such bonds extended to November 1, 1927, to which recognition of such 60 additional bonds the plaintiff objected, claiming that the recitals in such particular were contrary to the action of the board and that Bauer was not

the holder of such 60 additional bonds for collateral security or otherwise, and that the only outstanding bonds were the 215 bonds, and as carried on the books and records of the corporation and as by it in its annual reports from time to time listed and represented; that by reason of the premises, there were sufficient acknowledgments in writing made by the corporation to interrupt the statute; and that the defendants were estopped from relying on or urging the bar of the statute and to permit them to do so was inequitable and virtually a fraud on the plaintiff.

It was further alleged in the complaint that Bauer, the holder of four-fifths of the outstanding capital stock and 168 of the 215 outstanding bonds, for several years prior to the commencement of the action, dominated and controlled the board of directors and the management and affairs of the corporation, appropriated to himself all of the profits and income of the corporation in payment of fictitious and spurious claims asserted by him and by a company of which he held substantially all of the capital stock, and neglected to account for such profits or earnings and thereby prevented the payment of any interest on the bonds or of any dividends on the stock; that by the trust deed it was provided that neither the trustee nor any bondholder could institute or carry on any foreclosure or other proceeding for the collection of the bonds or of any unpaid interest, unless a majority of the holders of the outstanding bonds, in writing, consented thereto and requested the trustee so to do, and inasmuch as Bauer was the owner and holder of a great majority of the outstanding bonds, it at all times was within his power to prevent a foreclosure or the institution of any kind of proceeding, whether in law or equity, to collect payment of the bonds or any interest thereon, and that the defendant Bauer "has willfully prevented and still willfully prevents the institution and prosecution of any action," for the purpose of collecting payment of the bonds or any interest thereon, or to institute foreclosure or any other proceeding whether in law or in equity with respect thereto,

and hence his consent to take action in the premises was not obtainable and that without his consent no request, under the terms of the trust deed, could be made of the trustee to take action; and inasmuch as the plaintiff and the defendant Bauer were the only owners and holders of the outstanding capital stock of the corporation and of the outstanding bonds, they were the only real parties in interest with respect to the matters presented by the complaint and the trustee a mere nominal party.

It further was alleged in the complaint that in 1921 when an assessment was levied on the outstanding capital stock of the corporation, the plaintiff paying the assessment on only 1,000 shares held by him and Bauer on only 4,000 shares held by him, and all of the remaining outstanding stock purchased by the corporation at the delinquent sale, the enterprise from thence on was carried on and conducted by Bauer as a joint venture or partnership relation and with respect to which an accounting was sought by the plaintiff from Bauer.

Such alleged relation of a joint venture or partnership, as well as the alleged fraud and delicts of Bauer, and his domination of the board of directors and of the affairs and management of the corporation, were all denied by the defendants, as well as the allegations of the plea of estoppel and the tolling of the statute.

Bauer also filed a cross-complaint against the defendant corporation in which he, among other things, alleged that for the use and benefit of the corporation he had advanced to it more than $50,000 to develop and render valuable the property of the corporation, by reason of which it was enabled to lease its property and give an option to another mining company to purchase it for the sum of $400,000 upon which lease, at the commencement of the action, there had been paid more than $75,000; and that the defendant Bauer had rendered other valuable services for the defendant corporation which services were of the reasonable

value of $40,000, for which amount he prayed judgment against it. There was a denial by the plaintiff of the allegations of the counterclaim but none by the defendant corporation.

The cause was tried to the court who, among other things, found that the corporation defendant was organized in 1910; that no dividends at any time had been paid; that the bonds issued in 1910 matured in 1915; that their maturity and time of payment was extended until in 1917; that in 1921 an assessment of twenty cents a share on about 800,000 shares of outstanding capital stock of the company was levied and the stock on the delinquent sale purchased by the corporation for nonpayment of the assessment, except 1,000 shares upon which the assessment was paid by plaintiff and 4,000 shares upon which it was paid by the defendant Bauer, and that the plaintiff and Bauer thereafter became the owners of all of the outstanding stock of the corporation; that the plaintiff, when the corporation was organized and the bonds issued, became, and ever since was, the owner and holder of 47 bonds of the face value of $1,000 each and Bauer of 168 bonds of the face value of $1,000 each secured by the trust deed in question; that Bauer had advanced and loaned to the defendant corporation approximately $50,000 all of which was repaid to him except the sum of $9,500 including interest; that in 1923, the defendant corporation leased to the Combined Metals Company its mining and milling properties and gave it an option to purchase them for the sum of $300,000 with respect to which "royalties and rentals in large sums have been paid and are now being paid;" that by the terms of the trust deed it, among other things, was provided that no holder of any bond or coupon secured by the trust deed could institute any suit or action at law or in equity for the enforcement of the trust thereof, unless the holders of a majority in interest of the bonds secured then outstanding, in writing, requested the trustee so to do and afforded him a reasonable opportunity to proceed to exercise the powers granted by the trust deed to institute

such action, and unless adequate security and indemnity offered to the trustee against all costs and expenses and liabilities to be incurred thereunder or thereby; that no such request in writing or otherwise was made and no such indemnity offered and no demand or request of any kind made on the trustee to take any action, and that the defendant Bauer "in no wise prevented the institution and prosecution of any action by the plaintiff or by the trustee for the collection of such bonds or for the enforcement of such trust deed"; that since 1917 there has been no payment of any part of the principal or interest of plaintiff's bonds; that the defendant corporation had not, since 1917, made "any acknowledgment or promise in writing signed by said defendants of said bonds as an existing liability, debt or claim" and had not waived the statute of limitations and was not estopped from relying on and pleading it. No findings were made as to the counterclaim.

As conclusions of law the court, among other things, stated that the plaintiff was not entitled to maintain the action for the collection of the bonds, nor to maintain an action for the foreclosure of the trust deed and refused "to adjudicate the question as to whether or not plaintiff's bonds are barred by the statute of limitations upon the ground that the question is not properly before the court although the court is of the opinion that if the question were properly before it, he would be constrained to hold that the bonds are barred by the provisions of the statute of limitations," and thereupon ordered the action dismissed on merits and entered a judgment accordingly, from which the plaintiff prosecutes this appeal. He, among other findings, challenges the findings and conclusions denying him the right to maintain the action and the findings as to the statute of limitations. Holding, as the court did, that because of the provision of the trust deed the plaintiff could not, nor could the trustee, without the written consent and request of a majority of the holders of the outstanding bonds, maintain the action, it was not necessary to determine whether the

action was or was not barred. If, however, the court erred in such particular, then it is necessary also to determine whether the action was or was not barred.

We shall confine our review to a consideration of such questions. On the record the consideration of the one to a large extent involves a consideration of the other. The evidence referred to may thus be considered as applicable to both. The material facts necessary to such consideration are either not disputed or established as we think, by a great preponderance of the evidence. The corporation defendant was organized in 1910. In the same year there was issued by it three hundred bonds of the par value of $1,000 each, payable in 1915, with interest at the rate of six per cent per annum, payable semiannually; and to secure the payment thereof, a trust deed was given on all of the property, real and personal, of the corporation consisting principally of mining and milling properties. Admittedly, the maturity or time of payment of the bonds was extended to February, 1917. This action was commenced in February, 1926. The period of the statute of limitations in which to commence such an action is six years from the time the action accrues. In 1921, at which time there was an outstanding capital stock of the defendant corporation of about 800,000 shares of which Bauer held a large majority, an assessment was levied of 20 cents a share. Upon an agreement entered into between the plaintiff and Bauer, the plaintiff paid the assessment on only 1,000 shares of the stock held by him, and Bauer on only 4,000 shares of the stock held by him. It was thought that substantially represented a proper proportion of their respective holdings of the outstanding stock. No other assessments were paid, except a Mr. Abbot paid the assessment on only 509 shares. All the rest of the outstanding shares were purchased and acquired by the defendant corporation at the delinquent sale. Later, the shares of stock held by Abbot were also acquired by the corporation, so that the plaintiff and Bauer became the only holders of outstanding capital stock of the corporation. At that time

there was also a new board of directors elected. Bauer and the plaintiff remained on the board. Three other members were elected, friends and business associates of Bauer in other enterprises. One of them was the general manager of the Salt Lake Hardware Company, another its traffic manager, and another associated with it for many years, of which company Bauer also was the president and the owner of about all of its capital stock, or at least the owner of a large majority of it. The articles of the defendant corporation provided that to be a qualified member of the board of directors, it was essential that he be the owner and holder of at least 1,000 shares. None of such three directors in fact owned any shares and had no financial interest in the defendant corporation. While on the books there were 1,000 shares issued to each of such three directors yet all of such shares were indorsed in blank to Bauer, who, as he himself testified, was the owner of them. The court in effect so found.

That Bauer, from 1921 until the commencement of the action, controlled the board, and that such three members thereof at board meetings and in managing and administering the affairs of the defendant complied with and responded to the wishes and desires of Bauer does not on the record admit of such controversy. Bauer himself testified that "I consulted with them to get the benefit of their knowledge like I might with some lawyer to get the benefit of his advice, but my judgment and determination controlled." Meetings of the board were held infrequently. Notes were issued and paid to Bauer by the corporation for advances of money claimed to have been made by him to the corporation, claims allowed and paid to the Salt Lake Hardware Company for supplies claimed to have been furnished by it to the defendant corporation, and with respect to which the plaintiff in most instances was not consulted and had no knowledge of such transactions. As to that Bauer himself testified: "When I advanced money to the defendant company I directed the issuance of notes to me, and this was

done without consulting with Mr. Weir or anybody else about it. I directed the secretary to do it, and when the company was in funds I directed Mr. Burt, the book-keeper and secretary, to transfer the company's funds to me for payments on these advances and without consulting with Mr. Weir or anybody else. That is the way the business has been done."

When the plaintiff was consulted concerning any matters of the corporation and expressed an opinion with respect thereto he was overruled by Bauer, if not approved by him. Between 1921 and 1925, at plaintiff's instance, a number of conversations were had between the plaintiff and Bauer respecting the status of the bonds, their validity, and binding obligation, and as to action to be taken whereby their existing liability be acknowledged and the maturity or time of payment of them extended. Here it is to be noted that the plaintiff in all such matters was not consulting with or being advised by a mere director, or other mere officer of the corporation. He was consulting with and being advised by one who held four-fifths of the outstanding capital stock of the corporation, and 168 of the 215 outstanding bonds, who, with the plaintiff, constituted the only holders of the outstanding stock and bonds, and who completely directed and controlled the affairs and management of the defendant corporation. In all these conversations Bauer represented and stated he was willing that the maturity and time of payment of the bonds be extended, represented and recognized them as existing obligations and promised and agreed that formal action would be taken to extend the maturity and time of payment of them. Bauer himself at the trial testified that he at all times was willing to extend the maturity of all outstanding bonds. In giving his tesitmony he was asked, and answered:

"Q. And are you willing to do that now? A. Yes, sir.

"Q. And outside of Mr. Weir you are the person who is in control of that matter are you not? A. Well, Mr. Weir and myself, I guess."

On one of such occasions when the matter was discussed between plaintiff and Bauer, and Bauer putting the plaintiff off from immediate action being taken to extend the maturity of the bonds, and to acknowledge them as an existing liability, until the outcome of the option of purchase given the combined metals company was ascertained, the plaintiff stated to Bauer, "Well, Mr. Bauer, you might die and I might die and that would leave the matter in a very unsettled condition," to which Bauer replied, " Well, my estate would have a claim in case I died and your estate would have a claim in case you die. Our estates would have a claim upon the bonds. They would be valid claims against the estate;" and on other occasions Bauer stated to plaintiff that he and the plaintiff were the only parties concerned in the matter. And without substantial dispute it is shown that everyone interested or concerned was at all times, even at the trial, willing that the maturity and time of payment of all of the outstanding bonds be extended. On the record it is clear that the plaintiff was lulled into a sense of security that the validity and existing liability of the bonds would not be questioned on account of any delay occasioned by want of formal action on behalf of the corporation acknowledging the bonds as a valid and existing liability.

In May, 1922, the defendant corporation gave a written lease and option to a Mr. Travis to purchase all of its properties. The option contract provided, among other things, that if payment was made as therein specified the defendant corporation would procure a cancellation or relase of the trust deed and cause all of the outstanding bonds to be delivered to Travis. The agreement was signed, in the name of the corporation, by Bauer as its president and attested by its secretary. Attached thereto, and as a part thereof, was a further agreement signed by Bauer and Weir to the effect that they were the owners of all of the outstanding bonds consisting of 215 bonds, the plaintiff holding 47 and Bauer 168 bonds, and that a delivery of them would be made as in the contract of purchase specified.

The option was not exercised by Travis. Later a written lease and option to purchase for the sum of $300,000 was given by the defendant corporation to the Combined Metals Reduction Company, which was given immediate possession of and operated the properties, paying to the defendant corporation royalties and rentals from $833 to $1,333 a month; and, as alleged by the defendants, up to the time of the trial, more than $75,000 as royalties and rentals had been paid to the defendant corporation and such rentals and royalties still being paid by the Combined Metals Reduction Company. Notwithstanding such receipts, no dividends were paid on the stock of the defendant corporation and no interest on the bonds. And, as found by the court, no dividends at any time were paid on the stock, and no interest on the bonds since 1917. Some time after the lease and option to purchase the property had been given the Combined Metals Company, disagreements arose between the plaintiff and Bauer as to the application of the receipts of rentals and royalties and as to the management of the corporate affairs of the defendant corporation.

Every one concerned still willing that formal action be taken acknowledging the validity and existing liability of the bonds, a meeting of the board of directors in June, 1925, was called for the purpose of formally acknowledging such validity and liability and extending the maturity or time of payment of the bonds. The plaintiff and Bauer and two other directors were present at the meeting. The plaintiff introduced a resolution to the effect acknowledging the validity of the bonds and extending the maturity or time of payment "of all outstanding and unredeemed bonds" to November 1, 1927. The motion was seconded by another director. No one was opposed to the motion. All, including Bauer, were in favor of it. The regular secretary of the corporation was not present. A member of the law firm of the defendant corporation acted as secretary. So far, there is no dispute. The plaintiff testified that the motion was put and unanimously adopted; that a few days thereafter he asked

to be shown the minutes as prepared by the acting secretary; that the minutes as prepared recited that the outstanding bonds consisted, not of 215 bonds, but of 275 bonds, including 60 bonds held as collateral security, all acknowledged as valid and existing obligations and liabilities and the maturity or time of payment, with the consent of the holders, extended to November 1, 1927, at which time the corporation promised and agreed to pay them, and that on inquiry of the acting secretary why the minutes were prepared so as to show 275 bonds including the bonds held as collateral security, the secretary replied that Bauer told him to so prepare the minutes. The plaintiff objected to an acknowledgment of 275 bonds, claiming that the outstanding bonds consisted of only 215 bonds of which he held 47 and Bauer 168 bonds and as carried on the books and records of the corporation. Bauer testified that when the resolution was introduced and was seconded he asked the plaintiff whether the language "outstanding and unredeemed bonds" included bonds held as collateral security and that the plaintiff replied he thought the language was clear enough. Bauer did not testify whether the motion at the meeting was put to a vote or not. Another director testified that it was not put to a vote. The other director testified that he was not certain whether it was put or not, but thought it was not, and the acting secretary testified that he did not remember whether the motion was or was not put to a vote. However, from the recitals in the minutes as prepared by the acting secretary, it would seem that the motion was put and carried, otherwise the acting secretary made the minutes recite something—that all of the outstanding bonds consisting of 275 bonds were acknowldeged as existing liabilities and obligations and that the corporation promised and agreed to pay them and the maturity of the bonds extended to November 1, 1927—which did not take place at the meeting. The dispute as to the recitals of the minutes arose only with respect to the number of outstanding bonds which the minutes recited consisted of 275 bonds. Weir contending there were

only 215 outstanding bonds. The acting secretary and the directors also testified that at the meeting Bauer inquired whether the language, "outstanding and unredeemed bonds," included bonds held as collateral security and that considerable discussion arose over the matter; but no one testified that at the meeting anything was said as to any particular bonds or the amount of them which were claimed to be held as collateral security or by whom held. Because Weir objected to the recitals in the minutes that there were 275 outstanding bonds and all acknowledged and promised to be paid, the minutes were not filed. Later, and in the fall of 1925, when the option agreement of the Combined Metals Company was extended, a question of division of the proceeds of sale, if the option was exercised, arose between the plaintiff and Bauer in which Bauer claimed that advances made by him to the corporation and all claims due him should first be paid before any payments made on the bonds, to which the plaintiff objected, claiming that the bonds constituted a paramount and first lien. Bauer then proposed that his claims and the bonds be prorated, to which the plaintiff also objected. And therein lies the nub of this law suit.

At the trial the claim was made by Bauer that in addition to the 168 bonds held by him he also held 60 bonds as collateral security and that he was willing to have the bonds recognized as valid and existing liabilities and to extend the maturity or time of payment of them, provided the 60 bonds claimed to be held by him as collateral security were included. With respect to such claim the record shows that in 1918 the defendant corporation borrowed $15,000 from the National Copper Bank and to secure the payment thereof it delivered to the bank 30 bonds as collateral security, all of which was shown by the books of the defendant corporation. It was claimed by Bauer, and there is evidence to show, that later he himself paid the debt to the bank, and in that way obtained the bonds held by the bank as collateral security. But admittedly that debt was paid to Bauer by the defendant corporation, but he failed to

surrender up the 30 bonds, so acquired by him as collateral security, after the debt was paid to him. Bauer also claimed that the corporation owed the Salt Lake Hardware Company $20,000 for supplies furnished and that to secure that payment an additional 30 bonds were tendered to the Salt Lake Hardware Company as collateral security; but it declined to accept the bonds and thereupon Bauer himself paid the claim and took the 30 bonds as collateral security. The records of the corporation, however, do not show that any action was taken by the corporation or by the board of directors authorizing such bonds to be given as collateral security for such debt. The bookkeeper testified that Bauer demanded the bonds and that he just gave them to him. But that debt also was paid to Bauer. He himself so testified. Thus, though the 60 bonds had been given as collateral to secure the claims referred to, yet when they were fully paid it was the duty of Bauer to surrender the collateral to the corporation, which he did not do. True, Bauer made the claim that the corporation owed him additional unpaid claims for moneys advanced, and while the court found that Bauer had advanced from time to time in the aggregate something like $50,000, yet it also found that all of such advances had been paid to him except the sum of $9,500 including interest. The bookkeeper testified "I don't know of any minute or action of the board of directors authorizing the deposit of these bonds (to secure the payment of the claim of the Salt Lake Hardware Company) with Mr. Bauer as collateral. I delivered them to Mr. Bauer at his instance and no one else's and I have never seen the bonds since." And as hereinbefore shown by the testimony of Bauer himself, no action was taken by the board of directors with respect to his alleged claims of moneys advanced, or as payments made with respect thereto; and notes were given by him as president of the corporation to himself and paid as directed by him without any action of the board of directors or upon the advice of or consultation with any one. No moneys were drawn on

the funds of the corporation except by checks signed by Bauer and as directed by him and without consulting the board of directors or any one else. Likewise the rental and royalties and other income received by the corporation were applied as directed by Bauer without any action of the board of directors or without consulting the plaintiff or any one else.

By annual reports prepared by the bookkeeper and secretary of the corporation showing the assets and liabilities of the corporation, and by annual income tax reports verified by Bauer, on behalf of the corporation, 215 outstanding bonds of the par value of $215,000 together with the unpaid interest thereon, were represented and reported as existing liabilities of the corporation and as late as 1927, such bonds as existing liabilities of the par value of $215,000 together with over $149,000 of unpaid interest were so reported and represented.

We thus have a situation where Bauer held 168 of the 215 outstanding bonds and four-fifths of the outstanding capital stock of the corporation, dominated and controlled all of the affairs of the corporation since 1921, at all times up to the time of the trial recognized the validity of the bonds, expressed a willingness to have the maturity or time of payment of them extended, and promised and agreed that action would be taken to accomplish such purpose up to and as late as June, 1925, when the board of directors convened for such purpose; but when the plaintiff declined to have the corporation acknowledge the outstanding bonds to consist of 275 bonds including 60 bonds claimed to be held by Bauer, as collateral security, which the plaintiff contended Bauer was not entitled to, the minutes of the board reciting an acknowledgment of all outstanding bonds as existing liabilities, were not filed. Thus Bauer, who at all times had it in his power to control the whole matter was in a position to assert, if the plaintiff agreed to the minutes as prepared by the acting secretary, that he in

effect was the holder of 218 instead of 168 bond, of the par value of $228,000 secured by the trust deed, as against the plaintiff's $47,000, in a division of proceeds of the sale of the properties of the defendant corporation, or on a foreclosure of the bonds; if the plaintiff did not accept the minutes as so prepared Bauer then, contrary to what he at all times theretofore represented, sought to prevent any acknowledgment in writing of the validity of the bonds as existing liabilities, in which case he would be enabled to assert and have first paid his claims against the defendant corporation, which he claimed in amounts more than as found by the court, as well as his claim of $40,000 for services rendered, before any distribution or division of proceeds of a sale of the properties of the corporation, and thus no matter which course was pursued, he sought to be in position to claim an additional credit against the corporation of fifty or sixty thousand dollars. On the other hand, the plaintiff, if he did not consent to the minutes as prepared by the acting secretary, was thought to be in a situation to lose the whole of his $47,000, by Bauer preventing any action to foreclose the trust deed or by pleading the statute of limitations in defense to any action for a foreclosure or collection of the bonds; and, if the plaintiff consented to the minutes as prepared, Bauer was given an additional credit of $60,000 secured by the trust deed, to which plaintiff claimed he was not entitled.

Now, in view of this, what legal right has the plaintiff, without the consent of a majority of the holders of the outstanding bonds, here without the consent of Bauer, to maintain the foreclosure action. The respondents cite us to the rule as stated in 41 C. J. 876, § 1082, as follows: "In the case of a trust mortgage securing an issue of bonds, a request for the institution of foreclosure proceedings by a certain number or percentage of the bondholders is generally required, but such stipulation, if construed as forbidding a suit in equity by minority bondholders who are the victims of a conspiracy by the majority, would be void as ousting

the jurisdiction of the courts; nor is it always essential that there be a request by the creditor or a demand in writing."

And to page 882, § 1095, where it also is said:

"Under a trust deed of the character involved in the preceding section, any beneficiary may institute a suit for foreclosure in his own name, when the trustee unreasonably neglects or refuses to do so, or when the trustee is not a proper person to represent the bondholders or other beneficiaries, either by reason of an interest hostile to theirs or conduct prejudicial to their rights, or for other reasons, or, according to many authorities, even without any such cause, provided only the deed of trust itself does not forbid a single beneficiary to sue or restrict the right, although there are decisions to the contrary. The right of the beneficiary to foreclose may also arise from complications and numerous conflicting interests. Where an action by a bondholder is legally pending for the foreclosure of a mortgage when an action is brought by the trustee, the bondholder's action may be maintained where the action of the trustee is brought without leave of court as required by statute."

They also cite authorities to the effect that it is competent for bondholders to agree among themselves on what condition the right to foreclose may be exercised; that a provision in a mortgage or trust deed that no proceeding at law or in equity shall be taken by any of the bondholders secured thereby to foreclose until after a refusal of the trustee to comply with a request made of him by a designated number of holders of the bonds is reasonable and valid; that such provisions are designed for the better security of all, which should not be impaired by the conduct of one or a few, and to protect bondholders as a class against action and views of individuals or of a combination of individuals in pursuing separate and individual interests to the prejudice and injury of a majority of the holders of outstanding bonds and to the detriment of the mortgagor, imperilling and jeopardizing the security as to all bondholders.

We do not question the rule that ordinarily such and similar restrictive provisions in mortgages and trust deeds should be given effect. We, however, have here a most

peculiar and unusual situation, one where the plaintiff and Bauer are the only holders of the outstanding capital stock and bonds, Bauer holding 80 per cent of the stock and about 78 per cent of the bonds and whose "judgment and determination controlled" the affairs and management of the corporation, the payment of claims, and the application of receipts and earnings of the corporation, and who had it in his power to pay or not pay interest on the bonds, or to keep them alive as existing obligations or suffer them to become stale and unenforceable, as exigencies of the case best suited his purpose. Under the restrictive terms of the trust deed, he had the sole power to cause the commencement of proceedings for the collection of the bonds, or for a foreclosure of the trust deed, or to prevent the bringing of such or any action for the enforcement of any right secured by the trust deed, and even now, or whenever it meets his pleasure, has power to cause the bringing of an action, whether in law or equity, for the collection of the bonds, or for the foreclosure of the trust deed, and on behalf of the corporation to waive any plea of the statute of limitations, or to confess any estoppel urged against it. Thus, as is seen, the plaintiff, Bauer, and the defendant corporation constituted the real parties in interest. There were no creditors of the corporation, except the holders of the bonds and as to claims asserted by Bauer against the corporation for moneys advanced and services rendered. By the terms of the trust deed the trustee was the representative of the holders of the bonds, here of the plaintiff and Bauer. It thus represented no person or interest not now before the court. The plaintiff and Bauer holding all of the outstanding bonds and being the real parties in interest, had the trustee been made a party to the action it could not have asserted any right, claim, or interest, or made any defense which the real parties before the court could not assert or make. In the circumstances, the trustee was a mere nominal and not a necessary party. It would have been a mere idle ceremony to have made it a party. No request made of the

trustee by the plaintiff, a minority holder of the bonds, to bring an action of any kind for the collection of the bonds would, under the express terms of the trust deed, have been availing. Any demand made on Bauer, the majority holder of the bonds, for his written request to the trustee, or his consent, to bring an action of any kind for a foreclosure or collection of the bonds likewise would have been unavailing, for it was within the power of Bauer to grant or withhold his consent, not for the good or benefit of all bondholders, for the good of both the plaintiff and Bauer, but as best suited the purpose and advantage of Bauer who was in discord with the plaintiff. To have required such demand in the circumstances and obtain the consent of Bauer as a condition precedent to bringing the action would not have been unlike a situation where one was required to go to another hostile to him and obtain his consent that he might be sued to have their differences adjusted. While Bauer testified that he at all times was willing to keep the bonds alive as valid and existing obligations by extending their maturity or time of payment, yet he, from the commencement of the action to the end of it, was opposed to the institution of any proceeding for the foreclosure of the trust deed, or for the collection of the bonds, notwithstanding no interest had been paid on them since 1917. And on the record it is just as apparent that any demand made on him for a request that the trustee bring any kind of an action would have been futile. The case thus is not one where such restrictive provision in the trust deed is to be given effect for the better protection and security of all outstanding bondholders, but one where the provision is resorted to and asked to be given effect for the gain and advantage of the majority holders and to the prejudice and injury of the minority. To thus hold the restrictive provision effective is to deny the plaintiff all remedy to vindicate and protect his rights in the premises, and to oust jurisdiction of the courts. We therefore are of the opinion that the plaintiff had the right to maintain the action. *Brown* v. *Denver Omnibus*

*& Cab Co.* (C. C. A.) 254 F. 560; *Lowenthal* v. *Georgia Coast & P. R. R. Co.* (D. C.) 233 F. 1010; *Guaranty Trust & Safe Deposit Co.* v. *Green Cove Springs & M. R. Co.,* 139 U. S. 137, 11 S. Ct. 512, 35 L. Ed. 116; *Hoyt* v. *E. I. Du Pont, etc., Co.,* 88 N. J. Eq. 196, 102 A. 666. In view of the peculiar facts of the case we think such a holding is not in conflict with the rule stated in 41 C. J., supra.

Now, as to the statute of limitations. It is the contention of the plaintiff that the action was not barred because of acknowledgments in writing evidenced by the annual reports of the defendant corporation and by its income tax reports, and especially because of the acknowledgment made by it in the lease and option to purchase given Travis, and because of the pleaded estoppel. The bonds having been extended to February 1, 1917, it is not claimed by the respondents that the statute had run until after February 1, 1923. Section 6489, Comp. Laws Utah 1917, provides that "an acknowledgment of an existing liability, debt, or claim, or any promise to pay," if subscribed by the party sought to be charged, shall take the case out of the statute of limitations. It is the contention of the respondents that an acknowledgment in writing, without also a promise to pay the debt, liability, or claim, is not sufficient to interrupt or remove the bar of the statute; that it takes both an acknowledgment and a promise to do so, and that in the writings referred to there was neither an express nor an implied promise to pay. The statute, however, is that "an acknowledgment or promise to pay," if in writing, is sufficient. To construe the statute as do the respondents the word "or" in the statute must be read "and." That sometimes is done in deference to evident meaning of context, or when necessary to harmonize two provisions of statute, or give effect to all of its provisions, or to save the statute from the vice of containing two subjects and to make it constitutional. But the word "and" can never be substituted for "or" in a statute when the meaning of the language used in the statute is clear and there is nothing in it to call for

the substitution. 25 R. C. L. 977. We think that is the situation here. Hence, we are of the opinion that because of the statute an acknowledgment of an existing liability, etc., in writing, signed by the party sought to be charged is sufficient to interrupt or remove the bar of the statute. Such view is amply supported by judicial authority. *Joyce-Pruit Co.* v. *Meadows,* 27 N. M. 529, 203 P. 537; *Stewart* v. *Garrett,* 65 Md. 392, 5 A. 324, 57 Am. Rep. 333; *Bissell* v. *Jaudon,* 16 Ohio St. 499; *Doran* v. *Doran,* 145 Iowa, 122, 123 N. W. 996, 25 L. R. A. (N. S.) 805; *Harms* v. *Freytag,* 59 Neb. 359, 80 N. W. 1039; *Elder* v. *Dyer,* 26 Kan. 604, 40 Am. Rep. 320. We are aware of judicial holdings that an acknowledgment alone is not sufficient; that in addition there must also be an implied or an express promise to pay. But such holdings, as we think, do not properly reflect the intent of the statute; and, as will be seen, in some of such holdings, there was no such statute as ours.

In such connection it further is asserted by the respondents that to be effective the acknowledgment must be made to a creditor, or to his agent, or to one authorized to act on the acknowledgment, and that no such acknowledgment, was made in any of the writings referred to by the plaintiff. As to that, we again find the authorities in irreconcilable conflict. The cases are referred to in notes to the case of *Doran* v. *Doran,* reported in 25 L. R. A. (N. S.) 805. The annotator there expressed the opinion that the weight of judicial authority is that an acknowledgment to interrupt or remove the bar of the statute must be made to a creditor or an authorized agent, and that an acknowledgment to a stranger is insufficient, though a good many cases are cited by him where such an acknowledgment was held sufficient. Other cases are there cited where an acknowledgment made to a stranger was held sufficient if intended to be communicated to a creditor or to his agent. Cases also are cited by the plaintiff holding that an acknowledgment made to a stranger is sufficient to interrupt or remove the bar of the statute. But we are inclined to the view that an

acknowledgment made, not to a creditor or to his agent, or to one in privity with him, but to a stranger not intended to be communicated to a creditor or otherwise not intended to interrupt or remove the bar of the statute, or not made for such purpose, is not sufficient to constitute an acknowledgment interrupting or removing the bar. 37 C. J. 1617. The annual reports of the defendant corporation prepared by its bookkeeper recognize and acknowledge the 215 bonds of the par value of $215,000 together with the unpaid interest thereon as existing liabilities, yet is is not made to appear that such reports were signed by the defendant corporation, or by its agent, or by any of its officers, nor is it shown that they were published, or publicly put out, or delivered to its stockholders or other persons interested in its financial affairs and condition. The plaintiff testified that such reports were not received by him. The annual income tax reports, though verified by Bauer, the president of the corporation, and signed by him for and on its behalf acknowledging the 215 bonds of the par value of $215,000 and the unpaid interest as existing liabilities, also, as we think, may not properly be regarded as an acklowledgment interrupting or removing the bar of the statute. Such reports were not made to be communicated to the plaintiff or other creditor, or with the intent or purpose of interrupting the bar of the statute, or as relating to any such a subject, but with a wholly different intent and purpose; and too, such reports are regarded as confidential and generally inadmissible in evidence except in controversies with or between the government and the tax payer. Foster, Income Tax, 208.

But the written contract entered into with Travis by the corporation and signed by it stands on a different footing. By that contract, signed by the corporation, Travis was given an option to purchase of the defendant corporation all of its properties free and clear of all incumbrances "except only as to a certain mortgage or deed of trust securing outstanding bonds and as to taxes for the year 1922." The agreement further provided that the de-

fendant corporation would cause the mortgage or deed of trust to be canceled and discharged of record, and that when deeds were placed in escrow as specified in the agreement the defendant corporation was to cause all of the outstanding bonds secured by the mortgage or deed of trust also to be placed in escrow; and that when Travis had fully paid the purchase price specified in the agreement, all of the outstanding bonds were to be delivered to Travis and in the event the agreement became forfeited for noncompliance by Travis the bonds were to be delivered back to the owners. Attached to the agreement and as a part thereof, was a further agreement signed by the plaintiff and Bauer specifying that the total outstanding bonds consisted of 215 bonds of the par value of $215,000, of which Bauer was the holder of 168 bonds of the par value of $168,000, and Weir of 47 bonds of the par value of $47,000, and by such writing they agreed that when the first payment of $50,000 of the purchase price was made by Travis "to deliver said bonds to be placed in escrow with said agreement, deeds, assignments and abstract as by the agreement provided," and that if Travis performed all of the terms and conditions of the agreement with the defendant corporation, upon his part to be kept and performed, the bonds were to be delivered to Travis, and further agreed "to cause said outstanding bonds to be surrendered and cancelled and the trust deed securing the same to be released of record." Otherwise the bonds were to be delivered back to Bauer and the plaintiff. And by such writing they further agreed not to institute or cause to be instituted any foreclosure proceeding under the trust deed for a period of six months from the date of the agreement, which was May 10, 1922, and further to defer any foreclosure proceeding so long as Travis performed all of the terms and conditions of his contract on his part to be kept and performed.

The acknowledgment so made specifically referred to the debt or obligation in question and to the amount thereof. It was not an acknowledgment to a mere stranger. All parties

concerned were parties to the agreement which was subscribed by all of them, and the bonds by each regarded and acknowledged as an existing liability of the corporation. When the agreement was entered into, the bonds were still valid and an existing liability against the defendant corporation. We think an acknowledgment made under the stated circumstances was sufficient to interrupt the bar of the statute until six years thereafter or until 1928. *Doran* v. *Doran*, supra.

But further as to this. We think the defendants were estopped from asserting the bar of the statute. It is clearly shown that at all times the corporation and all parties concerned treated and regarded the bonds as an existing liability against the corporation. They were so regarded and treated on the corporation's books and records, and all parties concerned were willing that the maturity or time of payment of the bonds be extended and kept alive. Repeated promises and assurances were made by Bauer, who held 80 per cent. of the outstanding capital stock and 78 per cent. of the outstanding bonds and whose "judgment and determination controlled" in all things pertaining to the corporation, that such action would formally be taken. Relying upon such promises and assurances the plaintiff was lulled into security that the statute of limitations would not be relied on because of delay of such formal action. Such promises and assurances were made by one, who, as is seen, had the power to direct the corporation in such particular. In the circumstances, the plaintiff had the right to rest upon the belief that Bauer, holding as he did 80 per cent of the outstanding capital stock and 78 per cent of the outstanding bonds and controlling as he did the corporation, and willing at all times as he testified to extend the maturity or time of payment of the bonds, for the protection of his own bonds as well as those held by the plaintiff, would see that formal action would be taken to keep the bonds alive as existing liabilities. When, however, the board of directors in June, 1925, convened for the very purpose

of taking action to prevent the bar of the statute, and all willing to do so, because the plaintiff would not consent to an acknowledgment of 60 additional bonds claimed to be held by Bauer, Bauer, who controlled the whole situation, thus sought to turn his theretofore shield of protection of the validity of the bonds into a sword of destruction of them, believing that in a division of the properties of the corporation or of the proceeds of the sale of them, it would be as much to his benefit and advantage to destroy the bonds as to keep them alive, and in either event to the prejudice and injury of the plaintiff.

Since the plaintiff and Bauer are the only outstanding stock and bondholders, the only creditors and the only real parties affected by applying an estoppel, and because of the stated conditions and circumstances, we are of the opinion that it would be inequitable and in effect a fraud upon the plaintiff to permit the bar of the statute to be interposed, and we thus hold the defendants estopped from interposing it. *Anderson* v. *Cercone*, 54 Utah 345, 180 P. 586; *Young* v. *Schroeder*, 10 Utah 155, 37 P. 252; 37 C. J. 725.

There are other questions presented but we find it unnecessary to consider them. The order, therefore, is that the findings and conclusions of the court below be disapproved, the judgment reversed, and the case remanded, with directions to reinstate it, and to grant a new trial. Appellant to recover costs.

CHERRY, C. J., and ELIAS HANSEN and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified, does not participate herein.

On Petition for Rehearing.

PER CURIAM.

On petition for rehearing we, among other things, are asked to determine questions and findings claimed to be

involved on the appeal and which we did not determine, and
to modify the opinion accordingly. This is especially urged
so that the trial court on a retrial of the case may be properly
advised in the premises, and upon the stated ground that
by the opinion it is not certain what of the material issues
were determined and what not.

As stated in our opinion, we regarded the primary pur-
pose of the action to foreclose the trust deed given to secure
the payment of the bonds. We viewed the relevant alleged
facts of the rather voluminous complaint as more or less
relating to the question of the right of the plaintiff to
institute and maintain the action and of the statute of limi-
tations. While the court made findings respecting all of
the material allegations, yet as a conclusion of law held that
because of the provisions of the trust deed to the effect that
foreclosure or any other proceeding whether in law or in
equity to collect the bonds or enforce any right under the
trust deed could be instituted only by the trustee, and by it
only on the request of a majority of the holders of the
outstanding bonds, and as no demand was made on the
trustee by the plaintiff or by a majority of such holders to
bring an action to enforce the collection of the bonds, the
plaintiff had not the legal right to institute or maintain the
action, and hence the court dismissed it. The decree or
judgment is no broader. By it not anything is adjudicated
except a dismissal of the action. Hence, as stated in our
opinion, we confined our review to a consideration of the
questions of whether the plaintiff on his alleged facts was
entitled to institute and maintain the action, and as to
whether it was barred by the statute of limitations. Holding
as the trial court did that the plaintiff had not the legal
right to institute or maintain the action, it is doubtful
whether the findings, as made, have any pertinency, except
as they relate to the right of the plaintiff to institute and
maintain the action, and to the bar of the statute. The case
going off as it did without an adjudication on merits, we
did not and do not now feel justified in making a review

on merits or as directing a judgment in such respect. If we unnecessarily elaborated on the allegations of the pleadings and of the evidence, we did so only as we thought they had some bearing on the questions considered and determined by us.

The petition for a rehearing or for a modification of the opinion is therefore denied.