NILSON–NEWEY & COMPANY, a Utah partnership, Plaintiff and Appellant,

v.

UTAH RESOURCES INTERNATIONAL, a Utah corporation; Tonaquint, Inc., a Utah corporation; John H. Morgan, Jr.; Daisy Morgan; Resources Limited Partnership; Tonaquint–Indian Hills Limited Partnership; Country Club Partnership; Southgate Plaza Limited Partnership; Southgate Palms Limited Partnership; Southgate Resort Limited Partnership; and Service Station Limited Partnership, # 2, Defendants and Appellees.

No. 950126–CA.

Court of Appeals of Utah.

Oct. 19, 1995.

Jeffrey C. Swinton, Salt Lake City, for Appellant.

Jeffrey Robinson, Joseph C. Rust, and John M. Wunderli, Salt Lake City, for Appellees.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

Plaintiff Nilson–Newey & Co. appeals the trial court's grant of defendants' motion to dismiss, grounded primarily on laches and statutes of limitation. We conclude that laches bars plaintiff's complaint and affirm on that basis.

## FACTS

■ Because this is an appeal from a motion to dismiss, we accept the material allegations of the complaint as true and recite the facts accordingly. *Hansen v. Department of Fin. Inst.,* 858 P.2d 184, 185–86 (Utah App. 1993).

In January 1961, John H. Morgan Jr. (Morgan), Morgan Gas & Oil Co., Justheim Petroleum Co., Clarence I. Justheim, John H. Morgan, Sr., International Uranium, Inc. (collectively, the Salt Lake Group) and the predecessor to plaintiff Nilson–Newey & Co., B & E Securities, Inc. (B & E), executed a written instrument titled "Syndicate Agreement." Each party to the Agreement contributed cash to acquire "lands in and around St. George, Washington County, Utah." Profits were to be divided "pro rata among the syndicate members as their proportionate unit interest is to the whole." Morgan was to manage the syndicate and receive ten percent of its net profits. The syndicate was subsequently named S.W. Associates.

Beginning in February 1961, Morgan began acquiring land for the benefit of S.W. Associates. Over time, S.W. Associates accumulated at least 906 acres of property. In March 1966, the predecessor to defendant Utah Resources International, Inc. (URI) was formed. In March 1970, all of the members of the Salt Lake Group took shares in URI in exchange for their interest in S.W. Associates. B & E did not participate in this transaction.

Tonaquint's predecessor, a wholly owned subsidiary of URI, was formed in June 1970. All land acquired for the benefit of S.W. Associates was conveyed to Tonaquint's predecessor by 1973. The complaint alleges that "[f]rom the County records there is evidence that after April 4, 1970, Tonaquint began, among other things, selling, exchanging, subdividing, gifting, upstreaming to URI as dividends, and contributing in exchange for partnership interests certain of the 906 Acres." Plaintiff admits it was aware of development on the property.

In August 1973, B & E and Tonaquint's predecessor signed a written instrument titled "Disclaimer of Interest in Real Proper-

ty" (the Disclaimer). The document provided that B & E "hereby disclaims any and all right, title and interest in and to [the 906 acres] other than as provided hereinabove in favor of [Tonaquint's predecessor]" and reaffirmed that Tonaquint's predecessor "is subject to all obligations of the aforesaid syndicate agreement and will comply thereunder in all actions related to the distributions of profits distributable under said syndicate agreement."

On March 1, 1993, plaintiff sent a letter to Morgan requesting "[a]nnual reports dating back to the time of our investment, or the time that S.W. became part of a public company," and "[f]inancial information showing total investment in S.W. since our purchase, and the amount withdrawn from S.W. by any investors." Plaintiff never received the requested information. After some further correspondence, Morgan sent plaintiff a letter dated July 19, 1993 in which he stated:

> I took this matter up with the present Board of Directors as I mentioned to you that I would do. It was their very clear observation and decision that we had no legal obligation or responsibility for several reasons, probably the most important of which was the time factor precluding any obligations whatsoever.

The complaint alleges that "no accounting or distribution has ever been made to plaintiff regarding profits from the 906 Acres in selling real property to these partnerships and in operating these partnerships." In addition, the complaint alleges that from the consolidated statements of income contained in 10–K forms URI has filed annually with the Securities and Exchange Commission since 1981, "there appear to have been significant profits from the sale of portions of the 906 Acres that were neither reported to nor shared with plaintiff." Plaintiff admits that it never received these 10–K forms.

Plaintiff initiated this action on March 7, 1994. Plaintiff's eighty-five page complaint names eleven defendants and asserts twenty causes of action grounded in events spanning the thirty-five years since formation of the Syndicate Agreement. Pertinent to this appeal, plaintiff prayed for an accounting and

the recovery of that percentage of profits determined to be its due.

Defendants moved to dismiss the action pursuant to Rules 9(b) and 12(b)(6) of the Utah Rules of Civil Procedure. After a hearing on the motion, the trial court granted the motion by minute entry "for the reasons specified in the supporting memoranda." Defendants' supporting memoranda asserted, inter alia, laches and statutes of limitation defenses. Plaintiff appeals from the trial court's ruling.

## LACHES

Laches is an equitable doctrine "based on the maxim that 'equity aids the vigilant, not those who slumber on their rights.'" *Almeida v. Almeida,* 4 Haw.App. 513, 669 P.2d 174, 180 (1983) (quoting *Adair v. Hustace,* 64 Haw. 314, 640 P.2d 294, 300 (1982)). "The doctrine of laches may apply in equity, whether or not a statute of limitations also applies and whether or not an applicable statute of limitation has been satisfied." *American Tierra v. City of W. Jordan,* 840 P.2d 757, 763 (Utah 1992).

To successfully assert laches one must establish that (1) plaintiff unreasonably delayed in bringing an action, and (2) defendants were prejudiced by that delay. *Breuer–Harrison, Inc. v. Combe,* 799 P.2d 716, 726 (Utah App.1990).

Plaintiff first argues that laches has not been established in this case because it did not delay in bringing suit once the cause of action accrued. Plaintiff reasons that, because the relationship between itself and defendants was a trust or a partnership, no cause of action accrued until defendants repudiated their obligations under the relationship, which did not occur until defendants' 1993 letter. Defendants, without conceding that the relationship was one of trust, respond that even if it were, the facts were such that plaintiff must be charged with knowledge of an earlier repudiation.

Both parties rely on *Walker v. Walker,* 17 Utah 2d 53, 404 P.2d 253 (Utah 1965), and *Leggroan v. Zion's Savings Bank & Trust Co.,* 120 Utah 93, 232 P.2d 746 (Utah 1951). In *Walker,* the eldest son of Mrs. Walker

endeavored to save the family property, and did so, taking title to it in his own name. 404 P.2d at 255–56. When Mrs. Walker died, her son claimed sole ownership in the property and invoked laches against the suit brought by his brothers and sisters. *Id.* at 256–57. The court, stating the rule that statute of limitations and laches defenses are "not available to a trustee as against his beneficiaries until something has occurred to give a clear indication to them that he has repudiated his trust; or the circumstances are such that they must be charged with knowledge of such repudiation," concluded that "no such situation existed here." *Id.* at 257 (footnote omitted).

The facts before us are unlike *Walker.* In the present case, plaintiff, through its assignor, acquired an interest in S.W. Associates in 1961. The original document defining that interest, the syndicate agreement, entitled plaintiff's predecessors to a pro rata share in profits generated by the syndicate enterprise. Thus, in contrast to the situation in *Walker,* defendants had an affirmative obligation to distribute profits to plaintiff. Yet, as plaintiff acknowledges, "no accounting or distribution has ever been made to Nilson–Newey regarding profits from the 906 Acres." Further, plaintiff admits it was aware of development on the property which may have resulted in profits. These facts support a conclusion that plaintiff should be charged with knowledge of a repudiation long before 1993.

This case is factually closer to *Leggroan,* which addressed the question of when a trustee's inaction provides constructive notice. The court, applying the rule that limitations and/or laches run from the time the cestuis have constructive notice of final distribution, noted that the first payment upon liquidation and distribution of the trust occurred in 1929, the second in 1931, and the last in 1935. *Leggroan,* 232 P.2d at 749–50. However, the cestuis did not commence their action to compel an accounting until 1945. The court held:

> We do not say just how many years after 1935 this constructive notice came to the cestuis but we do say that to have waited

three or four years after the last known payment in 1935 without demanding an accounting or statement from the trustee-bank was unreasonable.

*Id.* at 750.

In this case, plaintiff received no payment of its share of profits generated from the development and sale of the 906 acres for at least twenty years. Plaintiff's failure to demand an accounting throughout that period of time is unreasonable unless the delay is excused by some other circumstance.

Plaintiff argues that defendants' conduct in this case constitutes such a circumstance. Plaintiff relies on *Burningham v. Burke*, 67 Utah 90, 245 P. 977 (Utah 1926). In *Burningham*, the plaintiff instituted an action to rescind his purchase of stock upon discovering the defendant company had gone into receivership. *Id.*, 245 P. at 978. The company asserted laches as a defense. The supreme court concluded the company had misrepresented its assets to the plaintiff, and that upon discovering the misrepresentation, plaintiff had diligently pursued his rescission claim. *Id.* at 982–83. Unlike *Burningham*, in the instant case, plaintiff nowhere points to an affirmative misrepresentation made to it over the more than twenty year period which would reasonably lull it into not asserting its rights.

A recent discussion of this discovery rule in the context of statutes of limitation in *Warren v. Provo City Corp.*, 838 P.2d 1125 (Utah 1992), is analytically helpful. In *Warren*, the supreme court stated the general rule that " 'mere ignorance of the existence of a cause of action will not prevent the running of the statute of limitations,' " *id.* at 1129 (quoting *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981)), and listed three circumstances in which the rule may be avoided if circumstances warrant. In discussing "[t]he concealment version of the discovery rule," the court noted that it is "essentially a claim of equitable estoppel, whereby a defendant who causes a delay in the bringing of a cause of action is estopped from relying on the statute of limitations as a defense to the action." *Id.* at 1129–30. The court then extended its estoppel analogy to declare that, as in all cases of equitable estoppel, "in order

to invoke the concealment version of the discovery rule it must be shown that given the defendant's actions, a reasonable plaintiff would not have brought suit within the statutory period." *Id.* at 1130.

Applying these principles to the facts before it, the court emphasized that the plaintiff in *Warren* did not allege that he relied on any representation made by the defendant. Instead, the plaintiff claimed that he was unable to discover a cause of action because the defendant would not return his phone calls. The court held:

> While a party may be excused for failing to pursue a claim if the party acted in reasonable reliance on a defendant's representations, absent any representations by the defendant, a plaintiff must take reasonable steps to prosecute the claim. Otherwise, there can be no showing that the defendant's actions prevented the discovery of the cause of action.

*Id.* The plaintiff had not alleged that he took reasonable steps to pursue his claim, and therefore, the court concluded that "the concealment version of the discovery rule is inapplicable to the instant case." *Id.*

■ The representations upon which plaintiff relies in the present case are defendants' management statements in its annual 10–K forms filed with the SEC. The statements invariably acknowledge that "[t]he successors in interest of certain persons who originally held interests in the property now owned by Tonaquint, Inc. are entitled to a percentage of Tonaquint's profits." However, plaintiff does not show how this was a misrepresentation or more importantly that it *relied* upon these statements. Instead, plaintiff alleges in its complaint that "[n]o forms 10–K have eve[r] been given to plaintiff by any defendant and plaintiff was compelled to obtain copies on its own from third-party sources prior to drafting this complaint." Therefore, the estoppel analysis of *Warren*, which excuses a party for failing to pursue a claim only "if the party acted *in reasonable reliance on* a defendant's representations," does not apply. *Id.* (emphasis added).

However, plaintiff in a closely related argument advances the proposition that acknowledgement of an existing liability will interrupt a time bar, urging us to find that defendants' statements in the 10–K forms were such acknowledgements. This argument is foreclosed by *Weir v. Bauer*, 75 Utah 498, 286 P. 936 (Utah 1930), wherein our supreme court adopted the "opinion that the weight of judicial authority" supports that for an acknowledgement to interrupt a time bar, it must be *communicated to the plaintiff.* *Id.*, 286 P. at 945. Thus, the court held that a corporation's annual income tax reports, which were not published and which the plaintiff testified he had not received, were "not sufficient to constitute an acknowledgment interrupting or removing the bar." *Id.*

Plaintiff attempts to distinguish *Weir* from the present case, arguing the 10–K forms are public information. However, the gravamen of *Weir* is whether the acknowledgment is communicated to the plaintiff, which in this case was undeniably not done.

Next, plaintiff argues that even if it delayed and the delay was inexcusable, defendants were not disadvantaged by the delay, but rather benefitted from it by "the continued use of all the profits that would have been paid to Nilson–Newey, for many years," and therefore laches does not bar this action. Defendants, on the other hand, claim that they would be greatly disadvantaged if plaintiff were allowed to prosecute its claims. Defendants point out that URI has engaged in numerous, complex transactions with numerous, unrelated individuals and entities involving millions of dollars over a period of thirty-five years, that many of the documents that might clarify these transactions are no longer available, that URI has never had custody of records created twenty years ago concerning the assignment from B & E, that all but one of the original syndicate members is dead, and that witnesses who might clarify existing records and documents substantiating the current controverted relationship are dead.

There can be little doubt that defendants would be disadvantaged if plaintiff were allowed to prosecute its claims. In *Leggroan,* the court stated:

This case involves an excellent example of the type of stale claim statutes of limitation and laches are designed to prevent. Here the bank is required to account 16 years after the trust terminated and 10 years after final distribution. During that period, the defendant testified that records and accounts had become lost, destroyed or were inaccessible.... The trust officer of defendant bank, who was the only party in the bank familiar with this trust and who had personal knowledge of its history and the transactions pertaining to it, had died.

232 P.2d at 750; *see also Johnson v. Estate of Shelton,* 232 Mont. 85, 754 P.2d 828, 831 (1988) (holding prejudice created by improvements to and conveyance of land during pendency of delay).

Finally, plaintiff argues that even if laches bars its claims as to earlier years, each new year brings a new cause of action, and laches therefore does not bar its claims as to subsequent years. This argument clearly has no merit with respect to plaintiff's request for an accounting that spans the entire thirty-five years since the execution of the syndicate agreement.

With respect to plaintiff's claim for recovery of its share in any profits, plaintiff argues that this case is like *Johnson v. Johnson,* 31 Utah 408, 88 P. 230 (Utah 1906), in which the Utah Supreme Court held that when contract obligations are payable by installments, the statute of limitations begins to run only with respect to each installment when it becomes due. *Id.*, 88 P. at 232. In *Johnson,* the plaintiff and the defendant entered into an agreement confirming a previous land transaction and providing that the defendant would pay the plaintiff on an annual basis "one-half of the crops that should be produced upon the land conveyed by the deed during the lifetime of [the plaintiff]." *Id.* at 231. The plaintiff later brought an action against the defendant, stating that the defendant had refused to pay the portion of crops which was due on the first day of January for the years 1903 and 1904. *Id.* at 230. The trial court overruled the defendant's motion to dismiss on statute of limitations grounds. *Id.* at 230–31. On appeal, the court affirmed

the trial court's ruling, stating that the action did not fall within the statute of limitations because

> [t]he contract is a continuing one during the life of [the plaintiff], but maturing in installments of yearly payments. It ... may be enforced by proper action whenever and as often as an installment falls due and remains unpaid....

*Id.* at 232.

Plaintiff argues that this case, like *Johnson*, involves continuing contractual obligations that mature yearly. Plaintiff advances language in the disclaimer in support of this proposition. That language affirms the original syndicate agreement, stating that "monies contributed by subscribers [to the syndicate agreement] shall be utilized in the purchase of real property in and around St. George, Utah, by [Morgan] subject, however, to an obligation to distribute all profits from the sale or other disposition of such property to the subscribers pro-rata." However, this language does not refer to any time in which the payments were to become due, or otherwise indicate that the syndicate agreement anticipated payment arrangements on an installment basis. Thus, on the facts before the trial court, there is no basis for applying the rule set forth in *Johnson.*[1]

## CONCLUSION

We conclude that plaintiff's failure to bring its action for an accounting and distribution of profits against defendants for thirty-five years constitutes unreasonable delay and that this delay is unexcused because defendants made no representations to plaintiff regarding profits, or lack thereof, that were owed. We also conclude that defendants would be prejudiced by the delay if plaintiff was allowed to prosecute its claims. We therefore hold that plaintiff's complaint is barred by laches and affirm the trial court's dismissal of plaintiff's complaint.

GREENWOOD and JACKSON, JJ., concur.

[1]. Because we decide that laches bars plaintiff's action, we need not consider in detail defendants' statutes of limitation defenses. However, defendants demonstrate that each of plaintiff's claims is barred by one or another statute, and plaintiff relies on the same arguments (i.e., that defendants' acknowledgements or representations estop them from asserting the limitations defense and the installment nature of the contract) to take the claims out of the statutes. Therefore, the analysis accompanying our discussion of laches is equally supportive of the conclusion that plaintiff's claims are alternatively barred under each of the applicable statutes of limitation.