## T. A. BOONE ET AL. *v.* JOSEPH E. DAVIS ET AL.

DEED OF TRUST. *Conveyance to trustee for grantor's family. Interest of bene-*
*ficiaries. Case in judgment.*

In 1854 W., under a stress of circumstances which compelled him to leave
the State, conveyed certain real property to S., trustee, and his successors
in fee simple for the benefit of the grantor's wife and children. It was
provided in the deed that it should be binding till set aside by agreement be-
tween the parties or by a decree of court. No such agreement or decree was
ever made. The deed contains no provision as to what should be done with the
property after the death of the beneficiaries. The beneficiaries in the deed
and also W. having died, the heirs of W. brought suit for the property
against the grantee of one of the beneficiaries and the heirs of the others.
*Held,* that W. by his deed parted with his entire interest of every kind,
and that the beneficiaries acquired an estate coextensive with the title of
the trustee, whether the deed was voluntary or not.

APPEAL from the Chancery Court of Hinds County.

HON. E. G. PAYTON, Chancellor.

In 1854 Thos. J. Wells being about to leave the State on account
of "unpleasant circumstances," made a deed to the land now in
controversy in this suit to M. W. Stanley, trustee for the benefit of
Nancy Wells, the grantor's wife, and their two minor children, J.
L. Wells and J. Dessama Wells. The deed expresses a considera-
tion of "ten dollars in hand paid," and "love and affection" for
the beneficiaries. After the words of conveyance and description
of the property the deed proceeds as follows : "To him, the said
Stanley, trustee, and to his heirs, assignees, and appointees in fee
simple absolute forever, and I do hereby agree to warrant and de-
fend the title to the same, and all matters and things herein convey
to him, the said party of the third part (the trustee), against the
claims of any person or persons whomsoever, upon trust, however,
and subject to the following conditions, that the said party of the
third part shall take full charge of the property herein conveyed
and manage it for the interest of the parties of the second part (the
beneficiaries), as herein set forth, and shall go on to collect all
matters belonging to said estate herein granted, and shall also buy,
sell, and dispose of all matters which shall be necessary to the

carrying on of the estate herein granted such as purchasing supplies, selling the crops, or anything on said estate which may be necessary to the successful management thereof for the interest of the parties of the second part, and should he at any time wish to resign his trust herein, he shall appoint a trustee to act in his stead ; or should he, the party of the third part, resign his trust herein he shall appoint a trustee to act in his stead ; or should he, the party of the third part, die or resign his trust without making any provision for a successor, the judge of the Probate Court of Hinds County shall appoint a trustee to act according to the conditions herein set forth, and this trust shall be deemed binding on the parties of the first part (the grantor) and third part (trustee) until the same shall be dissolved by agreement of the parties; or set aside by a decree of the Probate Court of the County of Hinds." No agreement to dissolve this deed was ever made between the parties. The Probate Court of Hinds County refused on petition of Thos. J. Wells in 1855 to set aside the conveyance. There is no provision in the deed as to what shall become of the property after the death of the beneficiaries. Mrs. Nancy Wells, Thos. J. Wells, and J. L. and J. Dessama Wells, having died, the heirs of Thos. J. Wells, to wit, T. A. Boone and others, filed their bill setting out the above facts against Jos. E. Davis, grantor of Mrs. Wells, and against the heirs of J. L. and J. Dessama Wells, praying that complainants be held to be owners in fee of the property above referred to and be put in possession.

The Chancellor dismissed the bill on demurrer. The complainants appealed.

*Nugent & McWillie* and *E. E. Baldwin,* for the appellants.

Did the grantor contemplate the continuance of the trust *longer than the lives of his wife and children,* or that, in case of the death of his children during minority and without issue then surviving, his estate should go to strangers in blood to him ?

Trustees, by construction, will not be held to take a greater estate than the nature of the trust demands ; and when the purposes of the trust can be answered by a less estate than a fee simple, a greater estate than is sufficient to answer such purposes shall not

be permitted to pass to the trustee.    *Coulter* v. *Robertson,* 24 Miss. 338.    Courts of equity regard the intent and will construe the instrument so as to carry it into effect.    4 Kent's Com. 298.    The trustee takes only that quantity of interest which the purposes of the trust requires and the instrument conveying it permits.    When an estate is devised to trustees for *particular* purposes, the legal estate is vested in them as long as the execution of the trust requires it, and no longer, and, therefore, as soon as the trusts are satisfied it will vest in the person beneficially entitled to it.    *Ircoll* v. *Walworth,* 4 Denio 388 ;  *Ware* v. *Amory,* 1 Curt. 419.    Lord Talbot said it was wholly a matter of intention whether the trustee should take a fee or not ; hence, in other cases, it has been said that if no intention appeared upon the face of a will that the trustees were to take anything beyond what was necessary for the execution of the trust, the estate, though limited to them and their heirs, would be cut down to the limit of the trust.  1 Perry on Trusts, §§ 315, 320.    The modern decisions favor a more liberal construction of deeds and wills, in order to reach the real intent of the makers ; and in all cases of devises or conveyances to trustees, for the separate use of married women, the court will, if possible, so construe them as to vest the legal estate in the trustees, because this will best effectuate the intention of the donor.    *Ware* v. *Richardson,* 3 Md. 505 ;  *Gould* v. *Lincoln,* 45 Am. Dec. 187.

There can be no question as to the intention of Wells in making the deed in this case.    The grantor's children were infants, and, in view of his necessary departure from the State, he desired some one to take possession of his property and manage it for the interest of his wife and children ; the trustee was to take full charge, and the trust was to continue and be binding until the same was dissolved by agreement of the grantor and trustee.    It seems clear to us that the grantor did not intend that the estate of the trustee should continue beyond the life of his children, and certainly not beyond the life of his wife and children.    He desired to guard his property against the hazards growing out of his sudden and compulsory absence, and to place it in proper hands to be managed for the interest of his children, while he contemplated his return at a

future time and made provision for a dissolution of the trust. At his death, of course, the property would descend to his children. As no provision was made to meet the contingency of his children's dying during their minority, and the after death of his wife, it may fairly be presumed to have been the intention of the parties that the grantor should have the right to be reinvested with the full possession and control of the estate again, and, out of it, to provide for his own support and the other objects of his bounty in such way as he might deem best, without the fetter and embarrassment of a trust. *Eaton* v. *Tillinghast*, 4 N. J. 281.

In *Norton* v. *Norton*, 2 Sandf. 296, John L. Norton, husband and tenant by the *curtesy* initiate, made a deed whereby he granted to Hannah Clanton, " her executors, administrators, and assigns," all the estate, right, title, claim, and demand which, as husband of Sarah Norton, the grantor had in lands and lots situate in the city of New York which were devised to her by the will of her father, the late Walter Franklin, but it was nevertheless declared that the conveyance " is made in trust for the said Sarah Norton, giving her full power through her said trustee to dispose of said property, collect rents, or do any other matter or thing relating to said property, without the let, suit, molestation, or hindrance of the said John L. Norton." The court in construing the deed, said : " Every trustee is presumed to take an estate as large as is necessary for the purpose of the trust, and no larger estate. The purpose of this trust was, first, for Mrs. Norton ; and, second, to empower her, through her trustee, to dispose of the property, manage it, and collect rents. The first object, and all of the second except the power of disposal, was attainable by a trust which should cease on her death. *For these objects*, therefore, the estate of the trustee cannot be deemed to have extended beyond her life. The power to dispose of the property is limited to her alone. *There is no limitation in favor of her heirs or devisees*, nor any language from which an intention can be inferred that others were to execute the power. The effect of the deed was to convey to the trustee merely an estate for the life of Mrs. Norton." This reasoning is peculiarly applicable to the case at bar.

The Chancellor claimed that the law does not sanction our view of resulting trusts in respect to modern conveyances, although the estate may have been granted without consideration. He says we cannot disprove the stipulated consideration of ten dollars, and as it is valuable the controversy is ended. We are referred to Perry on Trusts, § 162, as sanctioning this view. This statement refers to voluntary conveyances of an absolute character without any declaration of trust, and the very section itself contains an extract from Hill on Trusts which shows that the learned Chancellor misconceived the law. No presumption that a man is a trustee arises because he is a volunteer. He will be considered entitled to the enjoyment of the beneficial interest unless that title is displaced by sufficient evidence on the part of the donor to create a trust. Mere want of consideration does not now create a resulting trust. The law is laid down in *Philbrook* v. *Delano,* 29 Me. 410, cited by Perry on Trusts in § 162, thus : " An absolute deed, which purports to be given for a valuable consideration, carries with it the presumption that the grantee holds the land conveyed to his own use, and this presumption cannot be rebutted by parol evidence. No trust of which a court of equity can take cognizance results merely from the want of consideration for a deed. Mere want of consideration will not create a resulting trust." An examination of all the cases cited by Perry to sustain the statement in § 162 will disclose the fact that they were all *absolute conveyances* in fee. In some, attempts were made to establish *parol trusts,* in others resulting trusts. In our case there was no such conveyance ; the instrument is a deed in trust, and nothing appears on its face tending to show any intention that the grantee was to have any beneficial ownership in the property.

*W. A. Montgomery,* for the appellees.

Defendants in this cause insist that the conveyance to M. W. Stanley, trustee, *was intended* and is upon its face a fee simple conveyance to the beneficiaries.

" Executed trusts are enjoyed in the same condition, and entitled to the same benefit of ownership, and are consequently disposable and devisable exactly as if they were legal estates, and these rights

the *cestui que trusts* possess without the intervention of the trustee." 4 Kent's Com. 303.

"The *cestui que trust* is seized of the freehold in contemplation of equity." 4 Kent's Com. 304; Perry on Trusts, § 7.

Mrs. Nancy Wells and her two minor children, the beneficiaries, having then an estate in lands conveyed to them by the deed in trust to Stanley, take under Ch. 42, Art. 23, p. 609, and Art. 32, p. 610, of Hutchinson's Code, a fee simple estate, if a less estate be not limited by express words, or does not appear to have been granted by construction or operation of law.

The conveyance " to him, his heirs and assigns in fee simple forever," took the estate *forever* from Thomas J. Wells and his heirs without some express proviso for its return to him or them. The *habendum* of the deed is clear and explicit and cannot admit of construction for less than a fee simple estate.

The words at the close of the deed relied upon by complainants to defeat the title of the present *bona fide* purchasers for value cannot in their broadest acceptation be construed to mean more than that all the parties, first, second, and third part (see Perry on Trusts, § 104), could by mutual agreement dissolve the trust, and that if no such agreement was had, the power of relieving the estate of the trusteeship belonged to the Probate Court of Hinds County. Evidently his intent was to provide means by which the property, whenever desired by the beneficiaries, could be relieved of the trust which had been impressed upon it.

We concede *the intent* is the rule by which the construction of this instrument is to be governed. To arrive at the proper conclusion of the intent the *entire deed* must be taken into consideration, and we should not halt and pronounce that intent merely upon some disjointed part.

The situation and surroundings of the parties at the time is an important element of correct construction. Perry on Trusts, §§ 98, 99. Thomas J. Wells was an old man fast approaching the close of life's career; he was leaving the country to return no more forever, and he was making provision for his wife and children. Had it been in our day and generation he would naturally have made a direct deed to his wife and children.

Then he was confronted by the fact that his wife could not as yet hold real property which came to her from her husband after coverture.  See Hutchinson's Code, Art. 1, Ch. 34, p. 497 ; Perry on Trusts, § 95.  Hence we readily see why the appointment of a trustee to take the title and to take charge of the property till such time as they could hold it without the intervention of a trustee. The words were not then intended as words of limitation.

*W. A. Montgomery* also made an oral argument.

*Wells & Williamson,* on the same side.

The first question we propound is this : Did Thomas J. Wells in executing that deed of trust divest himself of all the interest which he had in that property, or did he retain a reversionary interest, and if yea, upon what terms was it to revert?  We contend that in the absence of an agreement of all the parties subsequently to be entered into there was no reversionary interest retained by Thomas J. Wells in the deed.  It is contended that the equitable estate vested by the deed of trust in the *cestui que trusts* was a life estate only, and that at the end of their lives the whole interest reverts to the grantor.  This would undoubtedly have been true if the grantor had limited in so many words a life estate in the *cestui que trusts*.  But we deny that there is one word that hints at such a thing.  The legal estate vests perpetually in the trustee and his successors as fully as technical legal words could make it, "a time in the land without end."  1 Hilliard on Real Prop. 77, 605.

"Every estate in lands which shall be hereafter granted  *   *   * shall be deemed a fee simple, if a less estate be not limited by express words," etc.  Hutchinson, Code 609, Art. 23.

There is nothing said in the deed with reference to the equitable estate as to its duration, and we contend that it was made perpetual. There is no proviso in the deed that when these trusts as to grantor's wife and children shall have been consummated that then the title should revert.  Hill on Trustees *65.

Undoubtedly there is nothing to limit the legal estate granted, but, on the contrary, it is made perpetual.  In the absence of other reasons the equitable estate ought to be of the same duration as the

legal estate, unless there is something in the deed positively stating that it should be otherwise. 1 Hilliard on Real Prop. 99.

There is a provision in the deed of trust for a reversion of the property. It is in the following words: "And this trust shall be deemed binding on the parties of the first and third part until the same shall be dissolved by agreement of the parties or set aside by a decree of the Probate Court of the County of Hinds, State of Miss." It will not be claimed by opposing counsel that such an agreement as is contemplated in this clause was ever made, nor will they claim that a probate court has any power to rescind or reconvey the property. All that is claimed for it is that it showed that it was not intended to be perpetual. All confess that it was not intended to be perpetual, but we claim that the only rational construction of it is that the parties, all of them, might agree to terminate the trust estate, and in the event either one of the three parties objected then it could not be done.

CAMPBELL, J., delivered the opinion of the court.

The deed of Thomas J. Wells vested the fee-simple title of the land conveyed in the trustee named and his successors in the trust, and the estate of the beneficiaries named in the deed was coextensive with the title of the trustee. On the death of each beneficiary his or her interest in the land not legally disposed of by him or her devolved by descent upon heirs. The deed of Wells placed the property conveyed forever beyond his reach, and at his death he had no interest in it descendible to his heirs. There was no reversionary interest in Wells and no resulting trust as to the property conveyed. If his deed be regarded as purely voluntary no trust resulted to him, but the legal estate was in the trustee and the whole beneficial interest in his wife and children.

*Affirmed.*