## LEGGROAN et al. v. ZION'S SAVINGS BANK & TRUST CO.

No. 7481.   Decided June 12, 1951.   (232 P. 2d 746.)

See 65 C. J., Trusts, sec. 112. Trustor, revocation of trust by. 54 Am. Jur., Trusts, sec. 77; 131 A. L. R. 457.

*David H. Oliver, Raymond R. Brady,* Salt Lake City, for appellant.

*H. P. Thomas,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

This action was instituted by Peter D. Chambers and Louis Leggroan to compel defendant, respondent bank, trustee of a trust created by Samuel D. Chambers, deceased, to account for the assets of said estate claimed to still remain undistributed in the hands of the trustee or lost through negligence or misfeasance of the trustee, and to make distribution of assets and accruals asserted. The two original plaintiffs died while the action was pending and the present plaintiffs were substituted. Defendant defaulted and the trial court decreed an accounting before a referee. The matter was heard and the referee accepted defendant's accounting showing the estate had been entirely distributed. The trial court adopted the referee's findings in toto and gave judgment to that effect. From this decision plaintiff prosecutes this appeal.

The facts, as found by the referee and adopted by the lower court show that in March, 1922, Samuel D. Chambers and Amanda Chambers, his wife, entered into a deed of trust naming defendant bank trustee. By this deed all property of the trustor was transferred to the bank and Chambers and his wife named as life tenants. Three notes, of $11,500 value, constituted the original trust res. The trustee was directed to collect all rents and profits from

the res and deposit same in the trustee bank to the credit of Samuel D. Chambers, subject to his order and use so long as he lived. If his wife survived him, she was to have a life estate under the same conditions. Upon the death of the two life tenants, the trustee was to convert the res into cash, pay obligations and distribute the residue to the remaindermen, the children and grandchildren of the life tenants including the two original plaintiffs to the complaint. The time, method and place of conversion was left to the trustee's discretion. It was stipulated that the trustor could include after-acquired property in the fund and that such additions would be described in a list to be attached to the trust deed.

In 1923 defendant bank, as trustee, opened a savings account for the settlor and deposited therein cash accretions of the trust. All income or money from the conversion of trust property went into this account. From 1923 until November, 1929, $28,255.75 was deposited in this account. In November, 1929, when the trustor died, the account balance was $5,066.37. Chambers' wife predeceased him. In addition to the cash balance, there was, at the time of trustor's death, other property in the trust consisting of notes, bonds and stocks valued at $11,805.00. Interest and other credits brought the total to $17,707.00. The referee found the trustee was credited with $4,459.00 for trust expenditures, leaving $13,248.00 for distribution to remaindermen. He further found that this sum was distributed by the trustee according to the terms of the trust, beginning in 1929 and ending in 1935. The two original plaintiffs in this action received payments of $2,000.00 in 1929, approximately $1,000.00 in 1931 and $312.00 in 1935. The present action was begun in 1945. No list, describing property added to the res from 1922 to 1924, was attached to the trust deed.

Defendant pleaded statutes of limitation and laches in addition to asserting that the trust res had been fully distributed in accordance with the trust deed, with the ex- ·

ception of some wholly worthless stocks. Because all persons connected with the bank who had personal knowledge of this trust and its transactions have died since 1935 and because the facts concerning the trust are beclouded by the passing of more than 15 years time and because many records of the trust have been lost, destroyed or are so filed it would take weeks of searching to unearth them, the defendant relied most heavily on limitations barring this action. Plaintiff asserts in rebuttal that no limitations are applicable and in support of this contention he claims the defendant comes under Section 104-2-34 U. C. A. 1943. This section provides:

"To actions brought to recover money or other property deposited with any bank, trust company or savings or loan corporation, association or society there is no limitation."

This appeal may be resolved on the single issue as to whether limitations, either statutory or equitable, are controlling.

If we were here confronted by a deposit in the ordinary legal sense of that term, that is a transaction in which the bank becomes the debtor of the depositor for the amount placed in the bank, it would seem that the plaintiff would prevail. Under the Utah Code, the statute of limitations does not run as to this type of account. We need not determine whether it would run after demand and refusal. Limitations and laches do, however, run against actions in respect to a trust. In the instant case, money and property was placed in defendant bank, not to form a creditor-debtor relationship, but to creat a trustor-trustee beneficiary relationship. As to the latter, the bank holds legal title and has possession of the assets but is not a debtor. Equitable title to the trust fund is in the beneficiaries. The deposit of money to the credit of the beneficiaries was the deposit of money in trust for them and made them cestuis and not creditors. In regard to an ordinary deposit, the bank holds both legal and equitable

title and is absolute owner of the fund, subject only to an obligation to repay the depositor upon demand. As trustee, however, the bank cannot use the money as its own but must carry out the terms of the trust, otherwise it commits a breach of it fiduciary duty. No different rule as regards the application of limitations pertains when a trust company is a trustee simply because such company uses the banking side of the institution to deposit monies for safekeeping while it is a trustee. That is simply an intra-institution transaction.

If, as plaintiff contends in his brief, the trust were void, the res might then be an ordinary deposit. But the mere fact the trustor reserves the right to modify or revoke the trust or use the income does not invalidate ■ it. See *Allen* v. *Hendrick,* 104 Or. 202, 206 P. 733, 741, where the Supreme Court of Oregon stated:

"Indeed, the test for determining whether a writing has effected a trust or is testamentary in character is whether the maker intended the instrument to have any effect until after his death, or whether he intended to transfer some present interest. (Citing cases.)

"If, therefore, the father intended to pass legal title to the son, as trustee, reserving however, a life estate in the certificates and funds which the certificates represented, with the right to call for a part or all of the funds * * * with remainder over to the son as absolute owner, then the transaction was a valid trust * * *."

A similar view is expressed by Professor Bogert in Trust and Trustees, Vol. 1, pages 336 and 339. The intent of the trustor in the instant case was to convey a present interest to remaindermen. The deed provided that the trustee was to collect *rents and profits* from the res and, after paying one-tenth to the Church of Jesus Christ of Latter-Day Saints, to deposit the remainder to the account of Samuel D. Chambers, subject to his order and use as long as he lived.

Plaintiff further urges that the trust was void because of an alleged alteration in the deed, which added the phrase,

"the trustee shall receive reasonable costs and expenses." This provision of the law would imply in any event and therefore the alteration, if one there was, is not material. Before an alteration will void an instrument it must materially alter the sense of the document and be made after execution and delivery.

The plaintiff further contends that even though the trust is valid as to the original res, it is void as to all of the after-acquired property because no list describing the additions was ever attached to the original deed. This defect does not prevent the property in question from being includable in the res. In interpreting the terms of the trust, the inquiry is as to the intent of the trustor. What was intended to be included in this trust? In this case, from 1923 to 1929, the trustor deposited property in the trust of a value of about $28,000.00. Both trustor and trustee treated these accretions as part of the res. The attachment of a list of added items to the deed was not a condition of their inclusion in the res. Failure to attach the list was not fatal to the trust for the intent of the settlor, as shown by his acts and the language of the deed, was to include more than the originally delivered property in the fund. Furthermore, a settlor has the inherent power to add property to his trust with or without a reservation of such right.

When does the statute of limitations or laches begin to run in favor of the trustee of an express trust and against the cestui? It is clear that while an express trust is in force and continuing, limitations will not begin against the cestui. Limitations commence, however, either at the time of final distribution if the cestui is given actual notice of the winding-up, or when, a reasonable time after final distribution, the cestui must be held to have constructive notice of final distribution.

If the trustee gives the cestui actual notice of the date of final distribution limitations or laches begin at that point. If, however, as in the present case, no actual notice is proven then the court must determine when the cestui acquired constructive notice of final distribution, and limitations and/or laches start to run from that time.

Such notice will be held to have come to the cestui when, under the facts and circumstances of the particular case, such time has elapsed after the last distributive act made known to the cestui by the trustee, that the cestui as a reasonable man did know or ought to have known that final distribution was an accomplished fact.

Such notice, either actual or constructive, is necessary because during the life of the trust and even after the trust terminates, by its own terms or otherwise, the trustee may legally hold the trust res long enough to liquidate the estate and distribute according to the trust terms. Limitations or laches will not commence at the termination of the trust, unless the trustee then has no other duties to perform with respect to the trust fund. In almost all cases the trustee has the duty of winding-up the estate. He can hold the property for this purpose after termination but after final distribution is made or claimed then the trustee has no right to retain any trust property and it is from the time of notice of this fact that limitations or laches begin.

Unless he has actual notice of this winding-up, the cestui must be allowed a reasonable time in which to become cognizant of the fact that the trustee at least considers his duties are ended and distribution is complete.

If the trust estate contains only cash, or property readily convertible into cash, this reasonable time will be relatively short. On the other hand, when, as in the case at bar, the res includes property not easily disposed of, the time when

notice may be presumed will be longer because the trustee necessarily must take more time to liquidate and distribute. Cestuis under such conditions will not be held to have had notice of a purported winding up until under the facts of the case they, as reasonable men, should have known the trustee considered that there was nothing further to be done respecting the liquidation and distribution. From that point on, they must act seasonably concerning an alleged breach of trustee's duty.

In the present case, the res included money, stocks, bonds and promissory notes. Some of them were found by the trustees to be worthless. These factors lengthened the time necessary for liquidation. The trust terminated by its own terms when the last of the two life tenants died but there remained the duty to liquidate and distribute the assets. Because some of the items could not be quickly disposed of, distribution and liquidation took from 1925 to 1935. There was no evidence of actual notice having been given to the beneficiaries that the distribution was completed in 1935. Laches or limitations then did not start to run until a reasonable time after 1935. The six-year period from 1929 to 1935 must, however, be considered in fixing the reasonable time boundary. As those years passed and greater time intervals between the receipt of moneys elapsed, the cestuis must have realized liquidation was nearing an end. The beneficiaries received their first payments in 1929, the second in 1931 and the last in 1935. Each successive payment would halt the running of the reasonable time period because the cestui might reasonably anticipate further payments. Further payments after 1935 could justifiably have been anticipated by the cestui but a reasonable time after 1935 such hopes should have vanished and limitations started to run. How long a time this reasonable period extended beyond 1935 can be determined by looking at the circumstances. The fact that the payments became successively smaller and further apart should have lead the cestuis as reasonable men to think that the trust estate was almost

entirely gone. As the years piled up and no other money was forthcoming the beneficiaries must be held to have acquired notice of the final ending of the trustee's duties. We do not say just how many years after 1935 this constructive notice came to the cestuis but we do say that to have waited three or four years after the last known payment in 1935 without demanding an accounting or statement from the trustee-bank was unreasonable. The passage of six years after constructive notice thus bars this action either by laches or statutes of limitations. It is unnecessary to determine at this time whether the statutory time limit supersedes the period which in equity is denominated as laches. If there was a superseding, the longest time named by the statute has run since reasonable persons would have taken notice.

This case involves an excellent example of the type of stale claim statutes of limitation and laches are designed to prevent. Here the bank is required to account 16 years after the trust terminated and 10 years after final distribution. During that period, the defendant testified that records and accounts had become lost, destroyed or were inaccessible. Deposit and withdrawal slips of settlor's account from 1923 to 1929 were intermingled and stored helter-skelter with thousands of similar slips from other accounts. The trust officer of defendant bank, who was the only party in the bank familiar with this trust and who had personal knowledge of its history and the transactions pertaining to it, had died. The authorities are unanimous that mere passage of time will not enable the invocation of the doctrine of laches but that when, in addition, the defendant is hamstrung in his defense by death of parties or loss of records due to the plaintiff's delay the doctrine will be invoked. See Bogert on Trusts and Trustees, Section 948, 949.

Testimony of the defendant at the hearing indicated it had used diligence in the liquidation of the estate and that, although some of the stocks and bonds declared worthless

cannot be found due to the passage of time, that prior to the hearing, effort was made to ascertain the facts. This testimony indicated the defendant was justified in declaring some of the trust property without value and writing the same off at one dollar value. No true or reliable picture could be obtained because of the lack of records and witnesses.

Laches or statutes of limitations must be held to have run against the plaintiff in this action. It is immaterial whether it is held that the Utah Code limitations of four or six years are applicable for in addition thereto it is clear that the equitable doctrine of laches applies.

Judgment affirmed, costs to the respondent.

McDONOUGH, J., concurs.

WADE, Justice, concurring in the result.

I concur in the result on the ground that the court's findings are sustained by a preponderance of the evidence.

LATIMER, Justice, concurring in the results.

I concur in the results.

Because my reasons for affirming the judgment are, in part, different from those expressed in the court's opinion, I prefer to separately state why I believe the appellants' contentions should be overruled. I have no dispute with the legal principles announced by the court's opinion, and concur on all grounds except the one treating with the defense of laches. I am unable to ascertain in what manner that issue was raised in the court below and why we decide an appeal on an issue not considered by the trial judge.

Briefly stated, the record reflects the following proceedings and actions: Plaintiff filed a complaint in which he alleged the creation of a trust, that the defendant was the trustee, that he was the personal representative of the

cestuis, and that the defendant had breached the trust agreement. The defendant bank filed a demurrer assailing the complaint in many particulars, one ground being that the cause of action was barred by certain sections of the Utah statutes dealing with limitations. However, it does not appear from the face of the complaint that the cause of action was barred, even though it appears an unusual length of time had elapsed between the death of the deceased and the filing of the complaint. The demurrer was over-ruled, and, upon failure of the defendant to answer, the trial court entered an order of default and a further order requiring it to file an account of its administration of the trust. Subsequently, the default was set aside, the court appointed a referee to hear the accounting, and the matter came on for hearing before him. After an extensive hearing, the referee made findings of fact and conclusions of law in which he found and concluded that the bank had fully accounted for all sums of money and property coming into its possession, that in the few instances where records were not available the bank should be excused for failure to produce because of the lapse of time, and that plaintiffs' cause of action should be dismissed. The defendant thereupon moved the trial court for an order approving the report of the referee and for a judgment in its favor of no cause of action. The court, pursuant to the petition, adopted the findings of the referee, adjudged that the defendant had accounted in full for the trust property and every part thereof, dismissed the complaint and entered judgment for the defendant. Plaintiffs appealed from that judgment.

Insofar as I can ascertain from the search of the records, an answer was not filed by the defendant and the defense of laches was not raised by motion or otherwise. It is true the bank, in its brief in this court, contends that the trial judge erred in not sustaining the demurrer, but the record at the time the demurrer was considered by the court was such that the motion was then properly overruled. No doubt the evidence taken before the referee would have

permitted a finding that laches barred plaintiffs' cause of action, but this issue was not passed on by either the court or the referee.

I concur in the results for the reason that even though laches may not be considered to sustain the judgment, the evidence does not preponderate against the findings of fact made by the referee and adopted by the court; the conclusions are supported by the facts; and, therefore, the judgment should be affirmed.

CROCKETT, J., concurs in the result.