HARRY TRAGER vs. CELIA SCHWARTZ & others.

Middlesex.    March 7, 1963. — April 1, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & KIRK, JJ.

*Fraud. Trust,* Amendment, Revocation. *Waiver. Corporation,* Transfer
of stock.

In a suit in equity by the settlor of a trust, any amendment of which by
the settlor under power reserved by him became "effective only upon
being recorded" in the registry of deeds, to regain stock in a small
family business corporation which he had placed in the trust and then,
on retiring from the business later, had withdrawn for transfer to his
son free of trust pursuant to an amendment of the trust and to an agree-
ment with his son and the corporation wherein the plaintiff acknowl-
edged receipt of a certain sum from his son in payment for the stock and
the corporation agreed to pay the plaintiff a stipulated amount weekly
for life, evidence reported did not show to be plainly wrong findings by
the trial judge that the son was told by the plaintiff that he had arranged
to record the amendment of the trust and that the son relied upon such
representation and paid the plaintiff for the stock, and there was no
merit in contentions by the plaintiff that his signatures to the amend-
ment, to the agreement, and to the stock certificate were secured by fraud
and misrepresentations of the son.   [655, 657–658]
Where it appeared that a declaration of trust provided that any amend-
ment or revocation thereof by the settlor under power reserved by him
should "become effective only upon being recorded" in the registry of
deeds, that many years after creation of the trust the settlor executed an
amendment withdrawing certain corporate stock from the trust and
stating his intention to transfer the stock free of trust to his son, and
told his son that he had arranged with his own lawyer to record the
amendment, but the amendment was not then recorded, that several years
after execution of the amendment the settlor by a recorded instrument
revoked the declaration of trust "in whole" and directed the trustees to
transfer the stock and other trust property to him, and that several days
after the recording of the revocation a copy of the amendment was re-
corded by the son, the amendment should be carried out as between the
settlor and the son and in the circumstances the stock was not a part of
the trust property at the time of the revocation.   [655, 658]
In a suit in equity to regain corporate stock the transfer of which was gov-
erned by restrictions that could "be waived by the board of directors in
any particular instance" and which the plaintiff had placed in an amend-
able trust, a finding by the trial judge that the directors had waived the
restrictions when the plaintiff executed an amendment to the trust with-
drawing the stock from the trust in order to transfer it to his son could

not be said to be plainly wrong where it appeared that the plaintiff and another were directors of the corporation when they as trustees signed the amendment in acknowledgment of notice of its contents, and that the son was the third director. [656–657, 658–659]

A revocation of a declaration of trust by the settlor under power reserved by him left the legal title to real estate constituting the trust res in the names of the trustees as a matter of record, and the settlor was entitled to have them reconvey the property to him. [659]

BILL IN EQUITY filed in the Superior Court on November 7, 1960.

The suit was heard by *Vallely,* J.

*Vincent Galvin* (*Samuel H. Cohen* with him) for John Trager.

*Samuel H. Lewis* for Harry Trager.

WILKINS, C.J. This is the bill in equity as to which we have today held that a petition by the plaintiff for leave to appeal late under G. L. c. 214, § 28, as amended by St. 1960, c. 207, § 2, from a final decree was properly allowed. *Ante,* p. 650. The final decree ordered and adjudged that the bill of complaint be dismissed as to the plaintiff; that the defendant John Trager is the owner of sixty-five shares of the capital stock of the defendant Northeastern-Malden Barrel Co., Inc. (Barrel); and that the defendant Barrel make record that the defendant John Trager is the owner of the shares. The evidence is reported. The judge made findings of the material facts, which we summarize.

Barrel is a closely held corporation of Massachusetts. On July 14, 1942, its capital stock consisted of 195 shares of no par common stock owned equally by the plaintiff, his brother, the defendant Ely Trager, and his son, the defendant John Trager. On July 15, 1942, the plaintiff, after consultation with counsel of his own choosing, executed as donor a declaration of trust, which was duly recorded in the registry of deeds. The res was sixty-five shares of Barrel stock and four lots of land in Malden. The trustees are Harry, Ely, and Harry's sister, the defendant Celia Schwartz.[1]

---

[1] The beneficiaries were the donor for life, then John, if living, free of all trusts, otherwise John's children until they respectively attained the age of twenty-five.

Paragraph 3 of the declaration of trust provides, "It shall require the unanimous decision of the trustees herein to be conclusive upon all matters coming within the range of their functions and duties." Paragraph 14 provides: "This declaration of trust may at any time or from time to time be altered or amended by the donor, or may at any time be revoked by him in whole or in part . . . . Any such alterations, amendments or revocations of this trust shall be [by] an instrument in writing, signed by the donor, and shall become effective only upon being recorded in South District Registry of Deeds for Middlesex County."

On February 4, 1954, the plaintiff, John, and Ely, who were the directors, and Barrel entered into an agreement[1] whereby the plaintiff conveyed to John the plaintiff's sixty-five shares in consideration of $5,000 paid to him by John. Barrel agreed to pay the plaintiff $50 weekly for life. The $5,000 was paid, and up to the bringing of this bill the $50 weekly was paid.

Also on February 4, 1954, the plaintiff executed a document entitled "Modification and Amendment of Trust,"

---

[1] Only a carbon of the agreement was put in evidence. This copy bears merely the signatures of John Trager and Harry Trager. The spaces for the signatures of Ely individually and as treasurer of Barrel are blank. The corporate seal has been affixed. The agreement is described as under seal.

The agreement contains the provisions: Whereas Harry, Ely, and John are all the stockholders of Barrel, and whereas Harry "desires to retire from active participation in the affairs of the corporation and all parties agree that this is for the best interests of said Harry . . . and for the other stockholders," and whereas Harry "desires to effect a transfer of his stock in said corporation to said John Trager, his son, during the lifetime of said Harry . . . and also to secure to himself certain income during the remainder of his life, and in consideration of other matters which shall be made to appear hereafter, the parties hereto agree as follows: 1. The said . . . Harry Trager, does hereby sell, assign, transfer and deliver to John Trager sixty-five shares . . . for the following considerations." 2. Harry acknowledges the receipt of $5,000 which Harry "agrees to deposit in a savings bank in the City of Malden, forthwith, in the joint names of himself and said John Trager, stipulating that any balance remaining in said account at the decease of either, shall be the property of the survivor, but this arrangement shall in no wise be construed to limit said Harry . . . as to the amount he may withdraw for his use during his lifetime." 3. Barrel agrees for the remainder of the life of Harry that it will pay to him $50 weekly, "acknowledging that said Harry . . . has rendered long and valuable service to the corporation and for the added consideration that the agreements herein contained will inure to the ultimate benefit of the corporation, in the opinion of the stockholders." 4. "The undersigned, as stockholders, being all the stockholders of Northeastern-Malden Barrel Co. Inc., hereby waive the requirements of the by-laws as to notice of sale of stock and consent to the foregoing transfer of said stock to John Trager."

which recited, ''And whereas, it being my purpose to accomplish during my life, the transfer of said sixty-five shares of common stock of said Northeastern-Malden Barrel Co., Inc., to my son, John Trager, absolutely, and free of all trusts; now therefore, I . . . do hereby give notice that said sixty-five shares of said common stock is being withdrawn from said trust and the operation thereof and is being transferred to said John Trager, and, to that extent, I do hereby modify and amend said trust in accordance with the right reserved to me in said trust declaration, so to do, by hereby specifically withdrawing from the operation of said trust, the said sixty-five (65) shares . . . .''[1]  This document was signed by the three trustees acknowledging notice.  The stock certificate for sixty-five shares held by the trustees was transferred to the corporation by Harry and Ely as trustees,[2] and the certificate was actually delivered to the corporation for the purpose of issuing a new certificate to John.  When the transaction was completed the plaintiff retained the original of the modification of trust, and John received a copy.  The plaintiff told John that he had arranged with his own lawyer to place the document on record as required by the declaration of trust. John relied upon this representation, but the plaintiff, with full knowledge, did not record the original or instruct his lawyer to do so.

On the back of the stock certificate there were restrictions upon the transfer of the capital stock which ''may be waived by the board of directors in any particular instance.''  At a meeting of the board of directors held on June 11, 1954, there was a vote waiving the restrictions so as to permit the transfer of the sixty-five shares to the corporation and to enable a substitute certificate to be issued to John. Through inadvertence this vote was not recorded in the

---

[1] The plaintiff's signature is preceded by the statement that he is setting his hand and seal ''hereto, and to another instrument of like tenor'' on February 4, 1954.

[2] The reverse side of the certificate where signed by them is dated August 29, 1959.

minutes of the meeting. The trial judge ruled that this vote waived the restrictions "if not previously waived by the action of the directors and principal stockholders in that they purportedly acted for the corporation in signing the agreement dated February the 4th, 1954."

After February, 1954, the plaintiff did not actively engage in the business, although he was "carried as a stockholder and director." On August 25, 1960, the plaintiff executed a document entitled "Revocation of Declaration of Trust," which was recorded in the registry of deeds on August 26. John received notice of the revocation on August 30, and on August 31 he placed on record a copy of the modification and amendment dated February 4, 1954. This document revoked "in whole" the declaration of trust of July 15, 1942, and directed the trustees to transfer and convey to him all the property of the trust, including the four lots of real estate and the sixty-five shares of stock. In his dealings with the plaintiff, and particularly with reference to the sixty-five shares, "there was no credible evidence which would support a finding of fraud and deceit on the part of John Trager."

The plaintiff contends, in substance, that certain findings were plainly wrong. Contrary to the conclusions of the judge, the plaintiff challenges the findings that he told John that he had arranged to have his lawyer record the amendment of the trust; that John relied upon the representation; and that John paid the plaintiff $5,000 in cash for the stock. The plaintiff charges that his signatures to the modification of the trust and the agreement of sale, both dated February 4, 1954, and to the stock certificate were secured by the fraud and misrepresentation of John.

We cannot accept these contentions. The plaintiff, when he testified, was eighty-five years of age. He had never been able to read or to write more than his name. On the other hand, he had founded the barrel company, had had considerable business experience, and had engaged a lawyer to prepare the declaration of trust in 1942. There is undisputed corroboration of that part of the transaction whereby

the father retired from the business and received from the corporation a weekly payment of $50. It is fully as likely that the father did not, or would not, remember the transactions of February 4, 1954, as that his son deliberately cheated him. The latter theory would call for sustaining a heavy burden of proof. The implied finding that that has not been done is not plainly wrong.

There remain questions of law. The plaintiff contends that the recording of his complete revocation on August 26, 1960, rendered ineffective the recording of the partial revocation on August 31, 1960. He relies upon the undoubted principle that "a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms." See *Phelps* v. *State St. Trust Co.* 330 Mass. 511, 512, and authorities cited. There is, however, more to this than a race to the registry of deeds. The earlier recording on August 26, 1960, of the later document made it appear that there had been a complete revocation on August 25, 1960. The subsequent recording on August 31, 1960, of the earlier document showed that there had been an amendment on February 4, 1954. The provision of the declaration of trust that amendments and revocations "shall become effective only upon being recorded" should not be interpreted, where there are no intervening rights of third parties, as preventing the carrying out of the earlier amendment once it has been recorded. This should be the result particularly where there was an express undertaking by one of the parties to see to the recording. In the circumstances the effect of the two recordings is to show that at the time of the revocation the capital stock was no longer part of the trust property.

The plaintiff next contends that there was no valid waiver of the restrictions upon the transfer of the stock. We are of opinion, however, that the judge could find a waiver without being plainly wrong. It is unnecessary to rely upon a vote at the meeting of the board of directors on June 11, 1954. Of the three trustees, who signed the trust amend-

ment of February 4, 1954, acknowledging notice of its contents, which included a statement of the plaintiff's intent to transfer the sixty-five shares to John, two were directors. The third director was John. The directors were also the stockholders. This was a small family corporation conducted without overemphasis on corporate formalities and reasonably is not to be held to the strict standards of larger commercial organizations. See *Samia v. Central Oil Co. of Worcester,* 339 Mass. 101, 109.

The revocation of the declaration of trust leaves the legal title to the lots as a matter of record in the names of the trustees. The plaintiff is entitled to have the trustees ordered to reconvey the lots to him.

The final decree is to be modified by striking out the dismissal of the bill, and by adding an order that the trustees reconvey the lots to the plaintiff, and, as so modified, it is affirmed.

*So ordered.*