The CONTINENTAL BANK & TRUST COMPANY, a Utah corporation, as Trustee under the Revocable Trust Agreement of Marshall E. Huffaker, deceased, Plaintiff and Appellant,

v.

COUNTRY CLUB MOBILE ESTATES, LTD., a Utah limited partnership; The First Security Bank of Utah, N. A., Personal Representative of the Estate of Marshall E. Huffaker, deceased; et al., Defendants and Respondents.

No. 17157.

Supreme Court of Utah.

July 14, 1981.

---

Peter W. Billings, Daniel W. Anderson, Salt Lake City, for plaintiff and appellant.

Robert B. Huffaker, Modesto, Cal., John B. Anderson, William J. Cayias, Joan Traub, Salt Lake City, Kent S. Marshall, Hampton, Conn., Quentin L. R. Alston, John W. Lowe, Marsha Penny Huffaker Jessee, Michael M. Mollinet, Robert O. Baldwin, Barbara Jane Watkins, Ray L. Montgomery, Craig T. Vincent, Salt Lake City, for defendants and respondents.

OAKS, Justice:

The issue in this appeal is whether a settlor who has created a trust by conveying property that is subject to an option to sell can thereafter extend the period of the option without the participation or consent of the trustee. We hold that he cannot. For ease of reference, this opinion will refer to the plaintiff-appellant, Continental Bank & Trust Co., as the "trustee," to defendant-respondent, Country Club Mobile Estates, Ltd., as the "lessee-optionee," and to Marshall E. Huffaker, deceased, as the "settlor."

The sequence of events is critical. On September 29, 1965, the settlor gave the lessee-optionee a fifty-year lease and an option to purchase, during the sixth year of the lease, the 31 acres of land at issue in this litigation. On March 1, 1971, the set-

tlor granted the lessee-optionee a five-year extension of its option, to September 29, 1976. On December 6, 1973, the settlor conveyed the subject property to the trustee in trust for various members of his family, signing a trust agreement and conveying the property to the trustee by a warranty deed, which was promptly recorded. The lessee-optionee had actual as well as constructive notice of the creation of this trust by at least April, 1975, when it began making its monthly lease payments directly to the trustee. On March 1, 1976, the settlor signed an instrument purporting to grant the lessee-optionee another five-year extension of its option, to September 29, 1981. The trustee was unaware of this action and did not participate in it. On October 30, 1978, approximately one week after the settlor's death, the trustee learned of the March 1, 1976, attempted extension and demanded and obtained a copy of the instrument.

On July 3, 1979, the trustee brought this action against the lessee-optionee and other interested parties to quiet title to the 31 acres of trust property and to determine the validity of the attempted extension of the option. Both parties moved for summary judgment on the issue of the validity of the extended option. The district court denied the trustee's motion and granted the lessee-optionee's motion, and the trustee appealed. We reverse.

A settlor admittedly could reserve power to extend the duration of an option on trust property, and do so without the consent or involvement of the trustee. The question is whether this settlor did so. The issue turns on the terms of the trust instrument, which, in this case, gave the trustee broad powers, including the power to grant options, but also reserved to the settlor the right to revoke the trust or to direct the trustee to sell trust property. The relevant clauses are as follows:

## ARTICLE IV.

To carry out the Trust purposes of the Trust created hereby ... the Trustee is vested with the following powers ...:

B. To manage, control, sell, convey, ...; to grant options....

K. ... The enumeration of certain powers of the Trustee herein shall not be construed as a limitation of the Trustee's power, it being intended that the Trustee shall have all rights, powers and privileges that an absolute owner of the property would have.

## ARTICLE V.

The Trustor by an instrument in writing filed with the Trustee may modify, alter or revoke this Agreement in whole or in part, and may withdraw any property subject to the agreement; ...

There is hereby reserved to the Trustor the power to direct the trustee, in writing, from time to time, to retain, sell, exchange or lease any property of the trust estate.... Upon receipt of such directions, the Trustee shall comply therewith.

The lessee-optionee argues, and the district court held, that in the foregoing provisions of the trust agreement the settlor reserved the power to direct the trustee in regard to the leased property, and that the effect of his executing the extension of the option on March 1, 1976, was to direct the trustee to sell the property to the lessee-optionee upon its exercise of the option. We disagree. We are unable to find an exercise of the "power to direct the trustee, in writing," in an act that was not intended to communicate and did not in fact communicate anything to the trustee. We are likewise unable to construe the extension agreement signed by the settlor and the lessee-optionee as "an instrument in writing filed with the Trustee" to "modify, alter or revoke this Agreement...." Nor can we agree with the dissent's argument for "liberal construction ... to the reserved powers of a settlor" in a trust agreement which expressly vests *the trustee* with the power "to grant options" and explicitly states its intention that *the trustee* "shall have all rights, powers and privileges that an absolute owner of the property would have." Article IV, quoted above.

■■ A trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of the beneficiaries. *Restatement of Trusts, Second*, § 2 (1959). It is therefore axiomatic in trust law that the trustee under a valid trust deed has exclusive control of the trust property, subject only to the limitations imposed by law or the trust instrument, and that once the settlor has created the trust he is no longer the owner of the trust property and has only such ability to deal with it as is expressly reserved to him in the trust instrument. *Boone v. Davis*, 64 Miss. 133, 8 So. 202 (1886); *Marvin v. Smith*, 46 N.Y. 571 (1871). As stated in Bogert, *Trusts & Trustees*, § 42 (2d ed. 1965):

> After a settlor has completed the creation of a trust he is, with small exceptions noted below, and except as expressly provided otherwise by the trust instrument or by statute, not in any legal relationship with the beneficiaries or the trustee, and has no liabilities or powers with regard to the trust administration.

None of the exceptions identified by Bogert applies in this case.

This is a case where a settlor created a trust and then chose to ignore it. He could have modified or revoked the trust, or directed the trustee in writing to sell or lease the trust property, but he took neither of these actions. Instead, more than two years after the creation and recording of the trust, and without any direction or notice to the trustee, the settlor gave the lessee-optionee a signed instrument purporting to extend its option to buy the trust property for another five years. The trustee did not learn of this instrument until two and one-half years later, immediately following the death of the settlor.

■■ An extension of the option to buy would obviously have a limiting effect on the value of the reversion owned by the trust (and thus on the rights of the trust beneficiaries), which the trustee has a duty to protect. *Acott v. Tomlinson*, 9 Utah 2d 71, 77, 337 P.2d 720 (1959).[1] Even a revocable trust clothes beneficiaries, for the duration of the trust, with a legally enforceable right to insist that the terms of the trust be adhered to. If we gave legal effect to the settlor's extension of this option in contravention of the existence and terms of the trust, we would prejudice the interests of the beneficiaries, blur some fundamental principles of trust law, and cast doubt upon whether it is the trustee or the settlor who is empowered to manage and dispose of the trust property in a valid revocable trust.[2]

The judgment of the district court is reversed and the cause is remanded with instructions to enter judgment for the plaintiff. Costs to appellant.

HALL, C. J., and STEWART, J., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.

HOWE, Justice (dissenting):

I dissent. The majority opinion has overlooked the cardinal principle of construction of a trust agreement which is that the settlor's intent should be followed. See *Leggroan v. Zion's Savings Bank & Trust Co.*, 120 Utah 93, 232 P.2d 746 (1951). Instead, the majority places a strict and rigid interpretation on the language of the trust agreement which defeats the settlor's intent and denies him an important power he

---

1. It is noteworthy that even as to trustees, the power to grant or extend options to sell trust property is strictly limited. Bogert, Trusts & Trustees, § 793 (2d ed. 1965).

2. *Trager v. Schwartz*, 345 Mass. 653, 189 N.E.2d 509 (1963), relied on by the dissent, is clearly distinguishable. That case merely defines the effect of a recording requirement specified in the trust instrument as a prerequisite to the effectiveness of an exercise of a power (partial revocation) clearly reserved in the trust instrument. Where there were no intervening rights of third parties, the court held that there was no reason not to give effect to the exercise of the power "once it has been recorded." 345 Mass. at 658, 189 N.E.2d at 512. Trager is not authority for giving effect to the settlor's attempted exercise of a power that was not reserved in the trust instrument or inherent in the trust relationship, when to do so would adversely affect the interests of the trust beneficiaries as a whole.

specifically reserved to himself. All of this is done in a fact situation where there is no adverse interest asserted and no one will be prejudiced in any way by following the undisputed and obvious intent of the settlor.

Unlike the situation found with many trusts, Huffaker in establishing his trust reserved to himself broad powers in Article V.:

### ARTICLE V.

The Trustor by an instrument in writing filed with the Trustee *may modify, alter or revoke this Agreement* in whole or in part, and *may withdraw any property subject to the Agreement*; Provided, however, that the duties, powers and limitations of the Trustee shall not be substantially changed without its written consent, except as to revocation or withdrawal. [Emphasis added.]

    \*    \*    \*    \*    \*    \*

There is hereby reserved to the Trustor the power to *direct the trustee, in writing*, from time to time, *to retain, sell, exchange or lease any property of the Trust estate*, to invest Trust funds, or to purchase for the Trust any property which they [sic] may designate and which is acceptable to the Trustee. *Upon receipt of such directions, the Trustee shall comply therewith.* [Emphasis added.]

Thus while Huffaker committed the property into the management and control of the trustee, he retained the right in Article V. to direct the trustee from time to time with regard to the property, and the trustee agreed that upon receipt of any such directions it would comply. It is significant that the consent of the trustee was not required. These broad reserved powers in effect gave him greater power over the property than the trustee possessed since he had the final word.

The property in question was subject to defendant's option when it was placed in trust. The trustee took title subject to that option and subject to future directions from Huffacker. The extension granted by Huffaker to the defendant was in effect a directive that the trustee sell the property to the defendant if and when it elected to purchase the property. At that time, the defendant could deliver the directive to the trustee which held legal title and the sale could be consummated. Contrary to what is said in the majority opinion, the extension was intended to communicate and did communicate to the trustee the settlor's intention to sell to the defendant. The trustee does not claim to have any doubt as to what the settlor intended.

There was no requirement in the trust agreement as to when the directive to sell had to be delivered to the trustee nor was there any requirement that the settlor must himself deliver the direction to sell to the trustee rather than the buyer deliver it. The majority opinion concedes that Huffaker had the power to extend the option but denies him that power because he did not communicate his intention to exercise that power to the trustee at the time he extended the option. It ignores the fact that the lessee had five years to decide whether it wanted to buy the property, at which time it could deliver the direction to sell to the trustee. The majority opinion reads into the trust agreement rigidity and strictness which is unwarranted.

The majority opinion contains a quote from Bogert, *Trust and Trustees*, § 42, for authority that after a settlor has completed the creation of a trust he is not in any legal relationship with the beneficiaries or the trustee, and has no liabilities or power with regard to the trust administration. However, as will be seen in that quote, it is there recognized that those rules do not apply where it has been expressly provided otherwise by the trust instrument. Such is the case here where the settlor reserved extensive powers and was himself the primary beneficiary.

Huffaker's extension agreement apparently would not have been challenged by his trustee if he had given written directions to the trustee to extend the option instead of executing the extension with the defendant himself, and apparently would not have

been challenged had he not died. Yet, although the trustee did not itself extend the option nor receive a copy of the agreement until after Huffaker's death, it had not in the meantime dealt with third parties concerning the property or made any commitments that were inconsistent with Huffaker's action. Since there were no intervening third-party rights and it is not unfair to the trust beneficiaries to require them to abide by the intention of their donor and benefactor, I see no justification for the refusal of the trustee to accept the extension agreement as a valid direction to sell the property as provided for by the terms of the trust. This is not a case where the trustee in ignorance of the action of the settlor in granting an option had also granted an option or dealt with the property in a manner inconsistent with the actions of the settlor so that there are conflicting claims of innocent third-parties presented. In such a case there would be some justification for applying a strict construction so that there can be orderliness in trust administration. After all, the reason for the provisions of the trust agreement defining the powers of the trustee and the reserved powers of the settlor was to provide for the exercise of those powers in a manner that would be orderly and without collision between the trustee and settlor. In the instant case the trustee has not even suggested how it will be prejudiced by following Huffaker's directions. The majority opinion makes reference to protecting the interest of the contingent beneficiaries but overlooks that Huffaker was not only the settlor but also the primary beneficiary both when the trust was established and when the option was extended.

The majority opinion treats the relationship between Huffaker and his trustee as an adversary relationship instead of recognizing that the trustee was Huffaker's fiduciary to *assist* him in managing *his* property. Therefore, there is no reason to construe the trust agreement as if it were meant to deal with a relationship between two adverse parties.

My view that a liberal construction should be given to the reserved powers of a settlor under these circumstances finds support in a decision of the Supreme Judicial Court of Massachusetts, *Trager v. Schwartz*, 345 Mass. 653, 189 N.E.2d 509 (1963). There the settlor on July 15, 1942, executed as donor a declaration of trust. The res was 65 shares of stock and 4 lots of land. In that instrument he reserved the right to alter, amend or revoke the instrument in whole or in part. However, it was specifically provided in the declaration of trust that "any such alterations, amendments or revocations of this trust shall be by an instrument in writing signed by the donor, and shall become effective only upon being recorded in the South District Registry of Deeds for Middlesex County."

Later, on February 4, 1954, the trustor executed a document entitled "Modification and Amendment of Trust" whereby he withdrew the 65 shares of stock from the trust and sold them to his son and told him that he had arranged for the recording of that instrument by his lawyer. However, he did not record the document nor instruct his attorney to do so. On August 25, 1960, the settlor executed a document entitled "Revocation of Declaration of Trust," in which he revoked in whole the declaration of trust of July 15, 1942. This revocation was recorded on August 26th. He thereupon directed the trustees to deliver to him the 65 shares of stock and the 4 lots of real estate. His son received notice of the revocation on August 30, 1960, and recorded the following day the modification and amendment dated February 4, 1954, by which he had obtained the 165 shares of stock.

In a suit brought by the settlor to regain ownership of the stock, he contended that the recording of his complete revocation on August 26, 1960, rendered ineffective the recording of the partial revocation on August 31, 1960. He relied upon the principle that "A valid trust once created cannot be revoked or altered except by the exercise of a reserve power to do so, which must be exercised in strict conformity to its terms." The court upheld the earlier sale of stock stating:

 

The provision of the declaration of trust that amendments and revocations 'shall become effective only upon being recorded' shall not be interpreted, where there are no intervening rights of third-parties, as preventing the carrying out of the earlier amendment once it has been recorded. This should be the result, particularly where there was an express undertaking by one of the parties to see to the recording.

In the instant case, defendant will be greatly prejudiced, and the settlor's intention thwarted, as a result of following the majority opinion's interpretation of the trust terms as they relate to a written direction to the trustee to sell trust property. Defendant gave up to the opportunity to purchase the property within the original option period in reliance on Huffaker's execution of the extension agreement, a document prepared by his attorney. I am not persuaded that because defendant was making its rental payments to the trustee it was unreasonable in obtaining the extension of the option, which previously had been granted it by Huffaker, to again deal with him and rely on him since he was the final power respecting his property, and since neither he nor his attorney who had full and complete knowledge of the trust apparently raised any question as to the propriety of what they were doing. Just as the settlor in *Trager v. Schwartz*, supra, was not permitted to gain advantage by his failure to record as required by the trust agreement, I think the settlor's beneficiaries in the instant case should not gain by Huffaker's omissions and to the extreme prejudice of defendant.

The trustee has based its arguments on cases and principles that are distinguishable or inapplicable to the instant case. It regards the trust agreement as expressly allowing only it, as trustee and holder of the legal title to the property, to sell, option, or otherwise dispose of it. But the language of the trust regarding powers retained by Huffaker is inclusive enough to encompass his action in this case, for he expressly retained the right to direct the plaintiff to sell the property, a right that is compatible with his granting of the option extension.

The trustee also asserts that the written instrument received after Huffaker's death was ineffective as a directive to the trustee. Plaintiff cites authority for the principle that a revocable trust can only be modified during the settlor's lifetime, e. g., *Chase National Bank of City of N. Y. v. Tomagno*, 172 Misc. 63, 14 N.Y.S.2d 759 (1939). We are not dealing with an attempted testamentary disposition in this case, however. The option extension agreement was executed during Huffaker's lifetime, and the fact that it was received by plaintiff only after he died does not deprive it of its effect.

I would affirm the judgment below.